**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

TUREK ENTERPRISES, INC., d/b/a
ALCONA CHIROPRACTIC,
individually and on behalf of all
others similarly situated,

      Plaintiff

vs.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, an Illinois corporation,
and STATE FARM FIRE AND
CASUALTY COMPANY,
an Illinois corporation,

      Defendants.

**CASE NO.**

**HON.**

**CLASS ACTION**
**JURY TRIAL DEMANDED**

_____

## CLASS ACTION COMPLAINT
## INTRODUCTION

1.    This class action broadly concerns the following issue: as between an insurance company that issues an "all-risk" businessowner's policy and a business owner policyholder who purchased "all-risk" business interruption insurance, who bears the risk when a government orders the policyholder's business closed for two and a half months?

2.      Plaintiff Turek Enterprises, Inc., d/b/a Alcona Chiropractic, individually and on behalf of all others similarly situated, files this class action against Defendants, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company. Plaintiff purchased a standard-form all-risk "Businessowners Coverage Form" property and casualty insurance policy from the Defendants. The Policy promised to provide coverage in the event of a risk causing (1) "direct physical loss of" or (2) "damage to Covered Property" at Plaintiff's premises.

3.      The State of Michigan under its emergency police powers issued Executive Order No. 2020-21, effective March 24, 2020 ("the Order"). The Order prevented Plaintiff from operating its chiropractic office.  The State likewise ordered numerous other policyholders to cease to operate their restaurants, dental and health care facilities, salons, retail stores, and other businesses not exempted from the Order.

4.      Like all other standard-form small business policies, The Policy provided "Loss of Income" and "Civil Authority" coverage. Under these coverages, if for any non-excluded reason, the Plaintiff's business was "suspended," Defendants promised to pay Plaintiff's lost net income plus costs Plaintiff needed to pay payroll and maintain its business.

5.     On March 24, 2020, Plaintiff's and the class's businesses suffered "physical loss" and a "damage to" property. Both the text of the Policy and case law have interpreted "damage" or "loss" as (1) a diminution in value, (2) financial detriment, (3) curtailment of right to full ownership; (4) an undesirable outcome of a risk; or (5) an actual change in insured property causing it to become unsatisfactory for future use. "Physical damage" may occur on a microscopic or sub-cellular level. In addition, Plaintiff, along with other class policyholders, has been ordered to make physical alterations to its property in order to resume operations.

6.     Plaintiff's and the class's right to full and unencumbered use of their covered business and personal property was thus compromised. The March 24 Order was the sole, direct and only proximate cause of the business losses suffered by the Plaintiffs and the class.

7.     As the State of Michigan issued the shutdown Order, and other states issued other versions of their economic shutdowns, the insurance industry began a public campaign that a so-called "virus exclusion" prohibited any coverage "against the Pandemic." Seizing on this relatively new addition to the list of exclusions in a standard-form property policy, the

industry loudly proclaimed not to even bother trying to file a claim: if the closure occurred during Covid-19, it's not covered.

8.     But this interpretation of the exclusion is utterly wrong. The Covid-19 virus was not the direct cause of the property damage at issue. The State did not order Plaintiff, or any proposed class member, to suspend its operation because its premises needed to be de-contaminated from the Covid-19 virus.  The State issued its Order to ensure the *absence* of the virus, or persons carrying the virus, from the Plaintiff's premises. And there is no evidence at all that the virus did enter Plaintiff's property or that it had to be de-contaminated.

9.     The premise under which the "virus exclusion" was included in standard-form all-risk policies like the one at issue was the opposite of the risk here. The exclusion was written in 2006 to add to the pollution and asbestos contamination exclusions. Given the intrinsic and extrinsic ambiguities in the exclusion, including clear admissions to insurance regulators that the exclusion was meant to apply only in claims for de-contamination costs, the Court cannot enforce it against the Plaintiff or the class if asserted.

10.     Plaintiff seeks declaratory and other relief on its behalf and on behalf of all other policyholders in the State of Michigan whose claims were preemptively denied by the Defendants that there is coverage against losses and damages suffered by Michigan policyholders under each of three coverages, "Loss of Income" coverage, "Extra Expense" coverage, and "Civil Authority" coverage provided by Defendants' standard-form policies of insurance. Plaintiff further seeks a declaration that the "virus exclusion" is inapplicable, procured through fraud or misrepresentation, and therefore void.

## THE PARTIES

11.     Named Class Plaintiff Turek Enterprises, Inc., d/b/a Alcona Chiropractic ("Turek") is the owner and operator of a chiropractor's office located at 445 State St., Harrisville, Michigan. Turek provides chiropractic care to the public.

12.     To protect the chiropractic practice, Plaintiff purchased a property insurance policy with policy number 92-KB-3489-4 (the "Policy") from Defendants. The policy has a term of May 22, 2019 to May 22, 2020 and was renewed for a term of May 22, 2020 to May 22, 2021. Plaintiff duly paid premiums on the policy, and said policy is in full force and effect today. (*Exhibit 1*).

13.     Defendant State Farm Mutual Automobile Insurance Company is organized under the laws of the State of Illinois and licensed in all 50 states, including the State of Michigan.  Defendant State Farm Mutual Automobile Insurance Company's corporate headquarters is located at One State Farm Plaza, Bloomington, IL 61710.

14.     Defendant State Farm Fire and Casualty Company is organized under the laws of the State of Illinois.  Defendant State Farm Fire and Casualty Company provides property insurance for State Farm customers in Michigan and the product lines that it writes include homeowners, boat owners and commercial lines.   Defendant State Farm Fire and Casualty Company's corporate headquarters is located at One State farm Plaza, Bloomington, IL 61710.

15.     Defendant State Farm Mutual Automobile Insurance Company and Defendant State Farm Fire and Casualty Company are referred hereto collectively as "State Farm".

16.     Upon information and belief, State Farm sells insurance in Michigan substantially similar to that purchased by Turek.  For the avoidance of doubt, this action seeks relief against State Farm for coverage under policies providing businesses "Loss of Income" coverage, "Extended Loss of Income" coverage, "Extra Expense" coverage, and "Civil Authority" coverage, commonly known as

"business interruption" or "business income" policies, sold to any policyholder class member through any of State Farm's captive insurers qualified do write insurance business in Michigan.

## RELEVANT POLICY TERMS

17.     The Policy is an all-risk insurance policy. Defendants' Policy promised to reimburse Plaintiff in the event of "physical loss to" or "damage" to all property used in the business of his chiropractor's office as a result of any non-excluded risk.

18.     Defendants promised that: "we will pay for accidental direct physical loss to that Covered Property at the premises described in the Declarations caused by any loss as described under SECTION I — COVERED CAUSES OF LOSS." "Covered Property" includes "Business Personal Property." "Business Personal Property" includes  "[p]roperty, used in your business, that you own, lease from others or rent from others, or that is loaned to you," and "[p]roperty of others that is in your care, custody and control." Ordinary usage of these words includes computers, supplies, inventory items, and leased business equipment.

19.     The Policy provides "Loss of Income" coverage.  This coverage provides for loss of: "Net Income (net profit or loss before income taxes) that would have been earned or incurred if no accidental direct physical loss had

occurred," as well as "[c]ontinuing normal operating expenses incurred, including 'ordinary payroll expenses.'"  "Ordinary payroll expenses" includes amongst other things, "[p]ayroll" and "[e]mployee benefits, if directly related to payroll." Under this coverage, Defendants promised to pay for up to 12 months: "[F]or the actual 'Loss of Income' you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'"

20.   The Policy also provides "Extended Loss of Income" coverage. Under this coverage, Defendants promised to pay additional "Loss of Income" for up to 60 days after operations are resumed.

21.   The Policy provides "Extra Expense" coverage.   Under this coverage, Defendants promised: "We will pay necessary 'Extra Expense' you incur during the 'period of restoration' that you would not have incurred if there had been no accidental direct physical loss to property at the described premises."  "Extra Expense" includes among other things "expense incurred ... [t]o avoid or minimize the 'suspension' of business and to continue 'operations'" at the described premises, or "[t]o minimize the 'suspension' of business if you cannot continue 'operations," or to "repair or replace any property," provided that "it reduces the amount of loss that otherwise would have been payable under this coverage or 'Loss of Income' coverage."

22.     The Policy provides "Civil Authority" coverage. Under this coverage, Defendants promised to pay for loss of business income in the absence of actual damage to Plaintiff's property under the following conditions:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual "Loss of Income" you sustain and necessary Extra Expense *caused by action* of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage….

23.     Plaintiff pleads that to the extent terms used in the "Covered Cause of Loss," "Loss of Income" coverage,  "Extended Loss of Income" coverage, "Extra Expense" coverage, and "Civil Authority" coverage are used inconsistently they are ambiguous, and under Michigan coverage law must be construed against the Defendants.

## JURISDICTION AND VENUE

24.     Plaintiff Turek is a Michigan corporation operating in Alcona County, Michigan. It is duly registered and qualified to conduct business at its stated location in Harrisville, Michigan.

25.     Defendants State Farm are Illinois corporations with their principal place of business in the state of Illinois.

26.     At all times material, each of the Defendants engaged in substantial activity on a continuous and systematic basis in the State of Michigan, by issuing and selling insurance policies in Michigan, and by contracting to insure property located in Michigan. Each Defendants sells insurance through Michigan-based agents and brokers and is qualified to conduct insurance business within the State of Michigan. State Farm Mutual Automobile Insurance is qualified as a property and casualty insurer under NAIC number 25178.  State Farm Fire and Casualty Company is qualified as a property and casualty insurer under NAIC number 25143.

27.     This Court's jurisdiction is based on 28 U.S.C. 1332(d) (2) and (6). There is at least one plaintiff diverse from one defendant, and the aggregate amount in controversy exceeds $5,000,000. Upon information and belief, there are hundreds, or thousands of identical form policies issued by the Defendants in the State of Michigan, and each of these policyholders is a potential class member. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

28.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the

claims occurred within the Eastern District of Michigan, a substantial part of property that is subject of the action is situated in this district, and Defendant State Farm bound this policy through a broker located within this district.

29.     This Court has personal jurisdiction over both Defendants because Plaintiff's claims arise out of, among other things, Defendants conducting, engaging in, and/or carrying on business in Michigan; Defendants breaching a contract in this state by failing to perform acts required by contract to be performed in this state; and Defendants contracting to insure property in Michigan, including but not limited to the premises insured under the Policy.

30.   Defendants   also   purposefully   availed   themselves   of   the opportunity of conducting activities in the state of Michigan by marketing their insurance policies and services within the state, and intentionally developing relationships with brokers, agents, and customers within the state to insure property within the state, all of which resulted in the policy at issue in this action.

**ON MARCH 24, 2020 PLAINTIFF SUFFERED A COVERED LOSS DUE TO THE STATE OF MICHIGAN'S EXERCISE OF POLICE POWER TO SHUT-DOWN ITS BUSINESS**

31.     On March 24, 2020, the Governor of the State of Michigan issued Executive Order 2020-21, titled "Temporary requirement to suspend activities

that are not necessary to sustain or protect life" (the "Order"). Among the terms of the Order are the following:

> "No person or entity shall operate a business or conduct operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations."

> "In-person activities that are not necessary to sustain or protect life must be suspended until normal operations resume."

> "a willful violation of this order is a misdemeanor."

32.    The Order barred Plaintiff from operating its business at the insured premises. At the same time, Plaintiff has incurred fixed costs necessary to maintain the existence of the practice.

33.    The State's exercise of police powers is a "Covered Cause of Loss." It caused physical loss to "[p]roperty, used in [Plaintiff's] business, that [it] own[s], lease[s] from others or rent[s] from others, or that is loaned to [Plaintiff]," and "property of others that is in [Plaintiff's] care, custody and control."

34.    Under Michigan law, "property" is both the tangible good and the possessor's right and interest to its use.  Michigan law defines "damage" as "injury or harm that reduces value, [or] usefulness." Michigan law defines "damage to property" as an interference with rights of ownership, possession,

or enjoyment.  Physical alterations to property may involve microscopic, sub-cellular, aesthetic, and other alterations that are not apparent to visual inspection. Additionally, loss of use, and loss of functionality are "direct physical damage" or "damage to property" under this all-risk Policy.

35.    The property Plaintiff uses in its business, as defined, has been damaged. It cannot be used for business activity in accordance with its pre-Order function and status. Among the property so damaged is Plaintiff's chiropractic equipment, certain leased equipment, medication and supplements with expiration dates, and other depreciating assets. Each of these has suffered loss of use, loss of functionality, loss of value, and other forms of damage and/or loss. Upon information and belief, every business policyholder in the class has likewise suffered the same type and manner of damage or loss.

36.    In addition, according to a May 21, 2020 amendment to the Order, a condition for resumption of Plaintiff's business will include structural alterations to the premises to comply with State-imposed requirements for resumption of business activity. Upon information and belief, every business policyholder in the class has likewise suffered the same type and manner of damage or loss.

37.     Plaintiff's and the class's "operations" have been "suspended" under the meaning of the Policy since the issuance of the Order. The Order has triggered "Loss of Income," "Extended Loss of Income," "Extra Expenses," and "Civil Authority" Coverages.

38.     The State applied its exercise of police powers to businesses throughout the State of Michigan. There are numerous businesses within a one-mile radius equally affected by the Order, and whose property rights are equally affected as those of the Plaintiff. Other non-essential businesses have suffered the same damage to property as Plaintiff. Each of their equipment or inventory has decayed or expired. Each has been ordered to make physical alterations in order to resume ordinary business. Accordingly, all conditions for "Civil Authority" Coverage have been met.

39.     Plaintiff has suffered a loss of business income since March 24, 2020. Defendants have not paid Plaintiff his "Net Income" and "continuing normal operating expenses," including "ordinary payroll expenses. These losses and expenses are not excluded from coverage under the Policy.

40.     Plaintiff's loss arises from the shutdown order. The Order and loss were a natural and continuous sequence, unbroken by any new, independent cause, which produces the injury, without which such injury would not have occurred. Accordingly, the State's exercise of its police powers by and through

the Order is the sole cause of the Plaintiff's and the class's loss of business income.

41.   Plaintiff provided notice of its losses and expenses to Defendants, consistent with the terms and procedures of the Policy. Defendants made a summary denial of the claim without undertaking any individual investigation. (*Exhibit 2*).

42.   Defendants' denial of coverage is perfunctory, inadequate, and contradictory. Plaintiff does not claim that there has been Covid-19 on its premises. Nevertheless, Defendants claim that a virus exclusion operates to deny the claim and the claims of other Michigan policyholders.

43.   Upon information and belief, Defendants have disseminated the same or substantially same denial to many other Michigan insureds, and Defendants intend to conduct no individual determination of coverage with respect to any claim that arises as result of the suspension of business activities in Michigan arising from the State's exercise of police powers.

44.   Plaintiff is not obligated to plead in anticipation of a defense. Although not required, for the avoidance of doubt, Plaintiff asserts that the standard-form virus exclusion is (1) inapplicable to these claims because the existence of the threat of the Covid-19 virus was unrelated to the loss suffered by State's exercise of police powers, and (2) to the extent Defendants seek to

assert the exclusion to non-cleanup actions it is ambiguous, must be construed against Defendants, and/or is void as against public policy due to misrepresentation. The ambiguity is both intrinsic and extrinsic.

45.    The exclusion began to be added to standard-form property policies after 2006. When adding the exclusion to the standard commercial property policy form, the Defendants, through their agents, misrepresented to insurance regulators what the exclusion was for, misrepresented that it would not narrow coverage, and misrepresented the apparent purpose of the exclusion.

46.    In order to be effective, the exclusion had to be approved by, among others, state insurance regulators. The Defendants, through their agents, told regulators that the reason for the amendment was for contamination removal costs in first party insurance situations. On July 6, 2006, the Insurance Services Office ("ISO") representing, among others, the Defendants, filed a circular with insurance regulators titled, "*New Endorsements Filed To Address Exclusion of Loss Due to Virus or Bacteria*." Among other things, in that document, ISO stated in relevant part:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand

> coverage and to create sources of recovery for such losses, contrary to policy intent.
>
> In light of these concerns, we are presenting an exclusion *relating to contamination* by disease-causing viruses or bacteria or other disease-causing microorganisms.

(*Exhibit 3*, emphasis added). In light of these representations, and in reliance on them, the exclusion was added to the standard-form policies, in addition to standard-form pollution and asbestos exclusions, to provide that this type of clean-up was also excluded.

47.     Plaintiff's claim occurred in the *absence* of virus contamination. The claim at issue is not for clean-up. Nothing in the Order compels Plaintiff or any policyholder to de-contaminate their premises. Nothing in the Order suggests that the reason for its issuance was to prevent premises from viral contamination. Defendants' denial of coverage is contrary to the plain language of the Policy, and to Defendants' corresponding promises and contractual obligations, and to its prior interpretation of and understanding of the risk of business interruption.

48.     One reasonable interpretation of that exclusion is that the Policy would cover the Plaintiff for negligent acts that pass Covid-9 (or any other virus) to its patients, but not cover Plaintiff for costs leading to de-contamination of the premises where the patient was infected. Thus, an absurd result would ensue,

that had the State ordered Plaintiff to shut down because of tortious acts relating to viral infection, coverage would be provided, but had the State ordered Plaintiff to shut down because the facility was contaminated leading to infection, no coverage attaches.

49.     Plaintiff pleads that the most plausible interpretation of the virus exclusion language cited in the denial letter is that told to insurance regulators in 2006. The exclusion would apply in the event of a loss not pleaded in this litigation. Only with that interpretation can Plaintiff's reasonable expectation of what it purchased be harmonized with the policy language.

### DEFENDANTS DENIED THE CLAIM SOLELY BECAUSE OF THE SCALE OF POTENTIAL LOSSES FOR A RISK THEY SHOULD HAVE ANTICIPATED

50.     The American Property Casualty Insurance Association has said that while the US property and casualty insurance industry takes in about $6 billion in premiums a month, it is seeing small business losses at between $255 and $431 billion.

https://www.reuters.com/article/us-health-coronavirus-insurance-business/insurers-feel-the-heat-as-chefs-trump-join-calls-for-payouts-idUSKCN22628P

51.     The insurance industry has written business interruption insurance for decades. It has written insurance assuming risks of government

shutdown for decades. Both business interruption insurance and civil authority insurance assume loss of use and loss of access losses. There is nothing unusual about this claim except for the sheer scale of claims from businesses in at least 41 states facing their states exercising their police powers in the face of an unprecedented emergency.

52.     Facing this, the insurance industry has publicly said that it did not "intend" to insure property damage arising from shutdown orders around the country. It has distanced itself from prior catastrophic—and covered—events like Hurricane Sandy, which caused massive property damage and resulting business interruption to its policyholders.

53.     The leading public voice for the property and casualty industry on this issue is Evan Greenberg, Chief Executive Officer for Chubb Insurance Group. Greenberg has publicly warned US policymakers that forcing insurers to pay for business interruption "would bankrupt the industry."

https://www.insurancebusinessmag.com/us/news/breaking-news/chubb-sued-by-human-rights-nonprofit-over-covid19-business-interruption-coverage-221072.aspx

54.     It appears that State Farm and other large property and casualty insurers have simply drawn a hard line that every claim relating to this situation, whether property or casualty, will be denied, and a collective decision has been made to fight each claim. Greenberg was quoted as follows:

"Most catastrophes, like a hurricane or an earthquake, are limited by geography or time," Greenberg said. "Pandemic is very different. You can imagine it hits all insurers, or a large majority, for a loss all at once. It has no geographic bounds, it has no time limit"... Disasters such as a fire, tornado, flood or a hurricane that cause physical losses to property would trigger business interruption coverage, he explained. Pandemics, unlike other catastrophes, are not included in the language for a specific reason, he said. Insurance companies have "finite balance sheets" and potential pandemic losses are "infinite," Greenberg said. "So the only one who could really take the infinite nature, financial nature, of that is the government," he said. "The insurance industry has $800 billion in capital and that's to support all the normal risks we insure, plus the catastrophe events ... we may incur in one year."

https://www.cnbc.com/2020/04/16/chubb-ceo-making-insurers-cover-pandemic-losses-is-unconstitutional.html

55.     The blanket denial of claims is guided not by policy interpretation or its earlier representations to regulators, but by the sheer size of the exposure to State Farm. State Farm offered business interruption insurance to its policyholders in full anticipation of the risks it is now facing. Insofar as it finds itself with potentially calamitous under-reserve and capitalization issues as a result of too many claims it failed to anticipate, the risk of under-pricing its business interruption insurance is not and should not be on State Farm's policyholders.

## CLASS ACTION ALLEGATIONS

56.     The class claims all derive directly from a single course of conduct

by Defendants: their systematic and uniform refusal to pay insureds for losses suffered due to the Order and the related actions to suspend business operations.

57.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3), as well as 23(c)(4), of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

58.     Plaintiff seeks to represent classes defined as:

a)     All persons and entities with insured property located in the State of Michigan with Loss of Income coverage under a property insurance policy issued by Defendants that suffered a suspension of business as a non-essential business, and for which Defendants have denied a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses ("the Loss of Income Coverage Class").

b)     All persons and entities with insured property located in the State of Michigan with Civil Authority coverage under a property insurance policy issued by Defendants that suffered Loss of Income caused by the Order, and for which Defendants have denied a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses ("the Civil Authority Coverage Class").

c)     All persons and entities with insured property located in the State of Michigan with Extra Expense coverage under a property insurance policy issued by Defendants that that suffered Loss of Income caused by the Order, and for which Defendants have denied a claim for the expenses or have otherwise failed to

acknowledge, accept as a covered expense, or pay for the covered expenses ("the Extra Expense Coverage Class").

59.   Excluded from each defined proposed Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; Class Counsel and their employees; and the judicial officers and Court staff assigned to this case and their immediate family members.

60.   Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed Classes, as appropriate, during the course of this litigation.

61.   This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

**Numerosity and Ascertainability**

62.   This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The members of each proposed Class are so numerous that individual joinder of all Class members is impracticable. There are, at a minimum, hundreds of members of each proposed Class.

63.   The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Defendants' or their agents'

books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

### Predominance of Common Issues

64.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because this action involves common questions of law and fact which predominate over any questions affecting only individual Class members. Defendants issued all-risk policies to all the members of each proposed Class in exchange for payment of premiums by the Class members. The questions of law and fact affecting all Class members include, without limitation, the following:

a)     Whether Plaintiff and the Class members suffered a covered loss under the policies issued to members of the Class;

b)     Whether Defendants' Loss of Income coverage applies to a suspension of business caused by the Order;

c)     Whether Defendants' Civil Authority coverage applies to a Loss of Income caused by the Order;

d)     Whether Defendants' Extra Expense coverage applies to a Loss of Income caused by the Order;

e)     Whether Defendants have breached their contracts of insurance through a uniform and blanket denial of all claims for business losses;

f)     Whether Defendants are entitled to raise the "virus exclusion" in light of the claims and their prior misrepresentations;

g)      Whether the "virus exclusion" is applicable, or is void;

h)      Whether Plaintiff and the Class members suffered damages as a result of Defendants' actions; and

i)      Whether Plaintiff and the Class members are entitled to an award of reasonable attorneys' fees, interest, and costs.

### Typicality

65.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of the Class members and arise from the same course of conduct by Defendants. Plaintiff and the other Class members are all similarly affected by Defendants' refusal to pay under their property insurance policies. Plaintiff's claims are based upon the same legal theories as those of the other Class members.  Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged.  The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

### Adequacy of Representation

66.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiff will fairly and adequately represent and protect the interests of Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex class action and insurance coverage litigation.

67.     Plaintiff and its counsel are committed to vigorously prosecuting

24

this action on behalf of the Class members and have the financial resources to do so. Neither Plaintiff nor its counsel has interests adverse to those of the Class members.

### Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests

68.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1). Plaintiff seeks class-wide adjudication as to the interpretation and scope of Defendants' property insurance policies. The prosecution of separate actions by individual members of the proposed Classes would create an imminent risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

### Final Injunctive and/or Corresponding Declaratory Relief with Respect to the Class is Appropriate

69.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to the Class members. The class claims all derive directly from Defendants' systematic and uniform refusal to pay insureds for losses. Defendants' actions or refusal to act are grounded upon the same generally applicable legal theories.

### Superiority

70.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The common questions of law and of fact regarding Defendants' conduct and the interpretation of the common language in their property insurance policies predominate over any questions affecting only individual Class members.

71.    Because the damages suffered by certain individual Class members may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for all individual Class members to redress the wrongs done to each of them individually, such that many Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

72.    The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized

litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

73.    Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify statewide classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

## CAUSES OF ACTION
### COUNT I: DECLARATORY JUDGMENT
**(On behalf of the Loss of Income Coverage Class)**

74.    Plaintiff re-adopts and re-alleges paragraphs 1 through 73 above.

75.    Plaintiff brings this Count individually and on behalf of the other members of the Loss of Income Coverage Class.

76.    Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to

declare the rights and other legal relations of the parties in dispute.

77.     Plaintiff's Policy, as well as the policies of other Loss of Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

78.     In the Policy, Defendants promised to pay for losses of business income sustained as a result of perils not excluded under the Policy. Specifically, Defendants promised to pay for losses of business income sustained as a result of a suspension of business operations.

79.     The Order caused direct physical loss of and damage to Turek and other Class members' premises, resulting in suspensions of business operations at these premises. These suspensions have caused Plaintiff and Class members to suffer losses of business income.

80.     These suspensions and losses triggered business income coverage under the Policy and other Class members' policies.

81.     Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

82.     Defendants dispute that the Policy and other Class members' policies provide coverage for these losses.

83.    Plaintiff seeks a Declaratory Judgment that its Policy and other Class members' policies provide coverage for the losses of business income.

84.    An actual case or controversy exists regarding Plaintiff's and other Class members' rights and Defendants' obligations to reimburse Plaintiff and other Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that the Policy and other Class members' policies provide coverage for Class members' losses of business income.

## COUNT II: BREACH OF CONTRACT
### (On behalf of the Loss of Income Coverage Class)

85.    Plaintiff re-adopts and re-alleges paragraphs 1 through 84 above.

86.    Plaintiff brings this Count individually and on behalf of the other members of the Loss of Income Coverage Class.

87.    Plaintiff's Policy, as well as the policies of other Loss of Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

88.    In the Policy, Defendants promised to pay for losses of business income incurred as a result of risk not excluded under the Policy. Specifically,

Defendants promised to pay for losses of business income sustained as a result of a suspension of business operations.

89.    The Order caused direct physical loss of and damage to Turek and other Class members' premises, resulting in suspensions of business operations at these premises.  These suspensions have caused Class members to suffer losses of business income.

90.    These suspensions and losses triggered business income coverage under the Policy and other Class members' policies.

91.    Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

92.    Defendants, without justification, have refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

93.    As a result of Defendants' breaches of the Policy and other Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendants are liable.

WHEREFORE, Plaintiff, individually and on behalf of other Class members, seeks compensatory damages resulting from Defendants' breaches

of the Policy and other Class Members' policies and seek all other relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT III: DECLARATORY JUDGMENT
### (On behalf of the Extra Expense Coverage Class)

94.     Plaintiff re-adopts and re-alleges paragraphs 1 through 93 above.

95.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Coverage Class.

96.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

97.     Plaintiff's Policy, as well as the policies of other Extra Expense Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

98.     Specifically, Defendants promised to pay for Extra Expenses incurred by Plaintiff and other Class members that the insureds would not have incurred if there had been no loss or damage to the insured premises.

99.     The Order caused direct physical loss of and damage to Turek and other Class members' insured premises, resulting in suspensions of business operations at these premises.  As a result, Plaintiff and other Class members have incurred Extra Expenses.

100.   These Expenses triggered Extra Expense coverage under the Policy and other Class members' policies.

101.   Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

102.   Defendants, without justification, dispute that the Policy and other Class members' policies provide coverage for these Extra Expenses.

103.   Plaintiff, individually and on behalf of the other members of the Extra Expense Coverage Class, seeks a Declaratory Judgment that its Policy, and those of other members of the Extra Expense Coverage Class, provides coverage for these Extra Expenses.

104.   An actual case or controversy exists regarding Class members' rights and Defendants' obligations under Class members' policies to reimburse Class members for these Extra Expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that the Policy and other Class members' policies provide coverage for Class members' Extra Expenses.

## **COUNT IV: BREACH OF CONTRACT**
### **(On behalf of the Extra Expense Coverage Class)**

105.   Plaintiff re-adopts and re-alleges paragraphs 1 through 104 above.

106.   Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Coverage Class.

107.   Plaintiff's Policy, as well as the policies of other Extra Expense Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

108.   Specifically, Defendants promised to pay for Extra Expenses incurred by Plaintiff and other Class members.  These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

109.   The Order caused direct physical loss of and damage to Turek and other Class members' insured premises, resulting in suspensions of business operations at these premises.  These suspensions have caused Class members to incur Extra Expenses.

110.   These Extra Expenses triggered Extended Expense coverage under the Policy and other Class members' policies.

111.   Plaintiff and the other Class members have complied with all applicable provisions of the Policy, including payment of premiums.

112.   Defendants, without justification, have refused performance under

the Policy and other Class members' policies by denying coverage for these Extra Expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

113.   As a result of Defendants' breaches of the Policy and other Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendants are liable.

WHEREFORE, Plaintiff, individually and on behalf of other Class members, seeks compensatory damages resulting from Defendants' breaches of the Policy and other Class Members' policies and seek all other relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT V: DECLARATORY JUDGMENT
### (On behalf of the Civil Authority Coverage Class)

114.   Plaintiff re-adopts and re-alleges paragraphs 1 through 113 above.

115.   Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

116.   Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

117.   Plaintiff's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for

claims covered by the policies.

118. In the Policy and other Class members' policies, Defendants promised to pay for losses of business income sustained and extra expenses incurred when, among other things, a Covered Cause of Loss causes damage to property near the insured premises, and the civil authority prohibits access to property near the insured premises.

119. Plaintiff and other Class members have suffered losses and incurred expenses as a result of actions of the Order that prohibited access to insured premises under the Policy and Class members' policies.

120. These losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Class members' policies.

121. Plaintiff and the other Class members have complied with all applicable provisions of the Policy, including payment of premiums.

122. Defendants, without justification, dispute that the Policy provides coverage for these losses.

123. Plaintiff seeks a Declaratory Judgment that its Policy and other Class members' policies provide coverage for the losses that Class members have sustained and extra expenses they have incurred caused by actions of civil authorities.

124. An actual case or controversy exists regarding Class members'

rights and Defendants' obligations under Class members' policies to reimburse Class members for these losses and extra expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff, individually and on behalf of other Class members, requests that this Court enter a Declaratory Judgment declaring that the Policy provides Civil Authority coverage for the losses and extra expenses incurred by Plaintiff and the other Class members.

## COUNT VI: BREACH OF CONTRACT
### (On behalf of the Civil Authority Coverage Class)

125.   Plaintiff re-adopts and re-alleges paragraphs 1 through 124 above.

126.   Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

127.   Plaintiff's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses and expenses covered by the Policy.

128. In the Policy and other Class members' policies, Defendants promised to pay for losses of business income sustained and extra expenses incurred when the civil authority prohibits access to property near the insured premises.

129. Plaintiff and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy and Class members' policies.

130. These losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Class members' policies.

131. Plaintiff and the other Class members have complied with all applicable provisions of the Policy, including payment of premiums.

132. Defendants, without justification, have refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

133. As a result of Defendants' breaches of the Policy and other Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendants are liable.

WHEREFORE, Plaintiff seeks compensatory damages resulting from Defendants' breaches of the Policy and other Class members' policies, and seek all other relief deemed appropriate by this Court, including attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, as follows:

A.    Entering an order certifying the proposed statewide Classes, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the classes;

B.    Entering declaratory judgments on Counts I, III, and V in favor of Plaintiff and the members of the Loss of Income Coverage Class, Civil Authority Coverage Class, and Extra Expense Coverage Class as follows:

    i.    Loss of Income, Civil Authority and Extra Expense losses and expenses incurred and sustained as a result of the Order are insured and covered losses and expenses under Plaintiff's and Class members' policies; and

    ii.    Defendants are obligated to pay for the full amount of the Loss of Income, Civil Authority and Extra Expense losses and expenses sustained and incurred, and to be sustained and incurred, as a result of the Order are insured and covered losses and expenses under Plaintiff

and Class members' policies;

iii. The "virus exclusion" (if raised as a defense) is not applicable to these claims and/or is void.

C. Entering judgments on counts II, IV, and VI in favor of Plaintiff and the members of the Loss of Income Coverage Class, Civil Authority Coverage Class, and Extra Expense Coverage Class; and awarding damages for breach of contract in an amount to be determined at trial;

D. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

E. An award of costs and attorneys' fees; and

F. Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all issues so triable.

Dated: June 23, 2020

Respectfully submitted,

**ALTIOR LAW, P.C.**

s/ Kenneth F. Neuman
Kenneth F. Neuman (P39429)
Jennifer M. Grieco (P55501)
Stephen T. McKenney (P65673)
Attorneys for Plaintiffs
401 S. Old Woodward, Suite 460
Birmingham, MI 48009
(248) 594-5252
kneuman@altiorlaw.com
jgrieco@altiorlaw.com
smckenney@altiorlaw.com

Andrew Kochanowski
Jason J. Thompson
Robert B. Sickels
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, MI  48076
248-355-0300
akochanowski@sommerspc.com
jthompson@sommerspc.com
rsickels@sommerspc.com

*Attorneys for Plaintiffs*

# EXHIBIT 1



**State Farm**

**STATE FARM FIRE AND CASUALTY COMPANY**

DECLARATIONS COVERAGE SUMMARY MAY 28 2020

3 State Farm Plaza
Bloomington IL 61791-0002

**Named Insured**

000275 3123
M-04-6604-FABA F U
TUREK ENTERPRISES INC
DBA ALCONA CHIROPRACTIC
443 S US 23
HARRISVILLE MI    48740-9405

| | |
|---|---|
| **Policy Number** | **92-KB-3489-4** |

| **Policy Period** | **Effective Date** | **Expiration Date** |
|---|---|---|
| 12 Months | MAY 22 2020 | MAY 22 2021 |

The policy period begins and ends at 12:01 am standard time at the premises location.

**Agent and Mailing Address**
ROGER LEMONS
PO BOX 129
HARRISVILLE MI    48740-0129

PHONE: (989) 724-6552

ST-2
0119-2000

# Medical Office Policy

**Automatic Renewal** - If the **policy period** is shown as **12 months** , this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

**Entity:** Corporation
**Requested By:**         Policyholder

Policy Premium                    $    575.00
Minimum Premium

Discounts Applied:
Renewal Year
Years in Business
Protective Devices
Claim Record

This policy is exempt from the filing requirements of section 2236 of the insurance code of 1956, 1956 PA 218, MCL 500.2236.

Prepared
MAY 28 2020
CMP-4000

© Copyright, State Farm Mutual Automobile Insurance  Company, 2008
Includes copyrighted material of Insurance Services  Office, Inc., with its permission.

002229 290    I
N

Continued on Reverse Side of Page

530-686 a.2 05-31-2011 (o1l3231c)

Medical Office Policy for TUREK ENTERPRISES INC
Policy Number        92-KB-3489-4

## SECTION I - PROPERTY SCHEDULE

| Location Number | Location of Described Premises | Limit of Insurance* Coverage A - Buildings | Limit of Insurance* Coverage B - Business Personal Property | Seasonal Increase-Business Personal Property |
|---|---|---|---|---|
| 001 | 445 S US 23 HARRISVILLE MI 48740-9405 | $    78,700 | $    29,800 | 25% |

* As of the effective date of this policy, the Limit of Insurance as shown includes any increase in the limit due to Inflation Coverage.

## SECTION I - INFLATION COVERAGE INDEX(ES)

Cov A - Inflation Coverage Index:         174.7
Cov B - Consumer Price Index:             258.7

## SECTION I - DEDUCTIBLES

**Basic Deductible**                 $1,000

**Special Deductibles:**

Money and Securities              $250        Employee Dishonesty              $250
Equipment Breakdown             $1,000

Other deductibles may apply - refer to policy.

© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Continued on Next Page

**Medical Office Policy for TUREK ENTERPRISES INC**
**Policy Number        92-KB-3489-4**



ST-2
0219-2000

## SECTION I - EXTENSIONS OF COVERAGE - LIMIT OF INSURANCE - EACH DESCRIBED PREMISES

**The coverages and corresponding limits shown below apply separately to each described premises shown in these Declarations, unless indicated by "See Schedule." If a coverage does not have a corresponding limit shown below, but has "Included" indicated, please refer to that policy provision for an explanation of that coverage.**

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| Accounts Receivable | |
| On Premises | $50,000 |
| Off Premises | $15,000 |
| Arson Reward | $5,000 |
| Back-Up Of Sewer Or Drain | $15,000 |
| Brands And Labels | $25,000 |
| Collapse | Included |
| Damage To Non-Owned Buildings From Theft, Burglary Or Robbery | Coverage B Limit |
| Debris Removal | 25% of covered loss |
| Equipment Breakdown | Included |
| Fire Department Service Charge | $5,000 |
| Fire Extinguisher Systems Recharge Expense | $5,000 |
| Forgery Or Alteration | $10,000 |
| Glass Expenses | Included |
| Increased Cost Of Construction And Demolition Costs (applies only when buildings are insured on a replacement cost basis) | 10% |
| Money And Securities (Off Premises) | $5,000 |
| Money And Securities (On Premises) | $10,000 |
| Money Orders And Counterfeit Money | $1,000 |
| Newly Acquired Business Personal Property (applies only if this policy provides Coverage B - Business Personal Property) | $100,000 |

Prepared
MAY 28 2020
CMP-4000

© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

002230 290
N

Continued on Reverse Side of Page

Page  3 of  6

**Medical Office Policy for TUREK ENTERPRISES INC**
**Policy Number        92-KB-3489-4**

| | |
|---|---|
| Newly Acquired Or Constructed Buildings (applies only if this policy provides Coverage A - Buildings) | $250,000 |
| Ordinance Or Law - Equipment Coverage | Included |
| Outdoor Property | $5,000 |
| Personal Effects (applies only to those premises provided Coverage B - Business Personal Property) | $5,000 |
| Personal Property Off Premises | $15,000 |
| Physicians And Surgeons Equipment | Coverage B Limit |
| Pollutant Clean Up And Removal | $10,000 |
| Preservation Of Property | 30 Days |
| Property Of Others (applies only to those premises provided Coverage B - Business Personal Property) | $2,500 |
| Signs | $2,500 |
| Spoilage (applies only to those premises provided Coverage B - Business Personal Property)<br>Expediting Expenses<br>On Premises<br>Off Premises | <br>$1,000<br>$20,000<br>$5,000 |
| Valuable Papers And Records<br>On Premises<br>Off Premises | <br>$50,000<br>$15,000 |
| Water Damage, Other Liquids, Powder Or Molten Material Damage | Included |

## SECTION I - EXTENSIONS OF COVERAGE - LIMIT OF INSURANCE - PER POLICY

**The coverages and corresponding limits shown below are the most we will pay regardless of the number of described premises shown in these Declarations.**

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| Dependent Property - Loss Of Income | $5,000 |

Prepared
MAY 28 2020
CMP-4000

002230

© Copyright, State Farm Mutual Automobile Insurance  Company, 2008
Includes copyrighted material of Insurance Services  Office, Inc., with its permission.

Continued on Next Page



**State Farm**

## DECLARATIONS (CONTINUED)

**Medical Office Policy for TUREK ENTERPRISES INC**
**Policy Number      92-KB-3489-4**



| | |
|---|---|
| Employee Dishonesty | $10,000 |
| Utility Interruption - Loss Of Income | $10,000 |
| Loss Of Income And Extra Expense | Actual Loss Sustained - 12 Months |

ST-2
0319-2000

### SECTION II - LIABILITY

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| Coverage L - Business Liability | $300,000 |
| Coverage M - Medical Expenses (Any One Person) | $5,000 |
| Damage To Premises Rented To You | $300,000 |
| **AGGREGATE LIMITS** | **LIMIT OF INSURANCE** |
| Products/Completed Operations Aggregate | $600,000 |
| General Aggregate | $600,000 |

Each paid claim for Liability Coverage reduces the amount of insurance we provide during the applicable annual period. Please refer to Section II - Liability in the Coverage Form and any attached endorsements.

Your policy consists of these Declarations, the BUSINESSOWNERS COVERAGE FORM shown below, and any other forms and endorsements that apply, including those shown below as well as those issued subsequent to the issuance of this policy.

### FORMS AND ENDORSEMENTS

| | |
|---|---|
| CMP-4100 | Businessowners Coverage Form |
| CMP-4528 | Policy Endorsement |
| CMP-4440 | Physicians and Surgeons |
| CMP-4905.1 | Loss of Income & Extra Expnse |
| CMP-4222.3 | Amendatory Endorsement |
| CMP-4910 | Employee Dishonesty |
| CMP-4941 | Spoilage Coverage |

Prepared
MAY 28 2020
CMP-4000

© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

002231 290
N

Continued on Reverse Side of Page

**Medical Office Policy for TUREK ENTERPRISES INC**
**Policy Number        92-KB-3489-4**

| | |
|---|---|
| FE-3653 | Actual Cash Value Endorsement |
| CMP-4909 | Money and Securities |
| CMP-4904.1 | Dependent Prop Loss of Income |
| CMP-4906 | Back-Up of Sewer or Drain |
| CMP-4903.1 | Utility Interruption Loss Incm |
| FE-6998.1 | Terrorism Insurance Cov Notice |
| CMP-4964 | Brands and Labels |
| FD-6007 | Inland Marine Attach Dec |

This policy is issued by the State Farm Fire and Casualty Company.

Participating Policy

You are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Yausell*
Secretary

*Michael F Tipson*
President

Prepared
MAY 28 2020
CMP-4000

002231 290
N

© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.



STATE FARM FIRE AND CASUALTY COMPANY



Case 1:20-cv-11655-TLL-PTM ECF No. 1-5, PageID.58 Filed 06/23/20 Page 48 of 99

A STOCK COMPANY WITH HOME OFFICES IN BLOOMINGTON, ILLINOIS

**INLAND MARINE ATTACHING DECLARATIONS**

3 State Farm Plaza
Bloomington IL 61791-0002

**Named Insured**

M-04-6604-FABA F U

TUREK ENTERPRISES INC
DBA ALCONA CHIROPRACTIC
443 S US 23
HARRISVILLE MI    48740-9405

| **Policy Number** | **92-KB-3489-4** |
|---|---|

| **Policy Period** | **Effective Date** | **Expiration Date** |
|---|---|---|
| 12 Months | MAY 22 2020 | MAY 22 2021 |

The policy period begins and ends at 12:01 am standard time at the premises location.

ST 2
0419-2000

## ATTACHING INLAND MARINE

**Automatic Renewal** - If the **policy period** is shown as **12 months** , this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

**Annual Policy Premium**          Included

The above Premium Amount is included in the Policy Premium shown on the Declarations.

Your policy consists of these Declarations, the INLAND MARINE CONDITIONS shown below, and any other forms and endorsements that apply, including those shown below as well as those issued subsequent to the issuance of this policy.

**Forms, Options, and Endorsements**

FE-8740.1          Inland Marine Conditions
FE-8774.1          Inland Marine Computer Prop

See Reverse for Schedule Page with Limits

Prepared
MAY 28 2020
FD-6007

002232

© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

530-686 a.2 05-31-2011 (o1f3232c)

## ATTACHING INLAND MARINE

| ENDORSEMENT NUMBER | COVERAGE | LIMIT OF INSURANCE | | DEDUCTIBLE AMOUNT | | ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| FE-8774.1 | Inland Marine Computer Prop<br>Loss of Income and Extra Expense | $<br>$ | 25,000<br>25,000 | $ | 500 | Included<br>Included |

———— OTHER LIMITS AND EXCLUSIONS MAY APPLY - REFER TO YOUR POLICY ————

© Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Prepared
MAY 28 2020
FD-6007

002232

530-686 a.2 05-31-2011 (o1f3233c)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CMP-4528 POLICY ENDORSEMENT

This endorsement modifies insurance provided under the following:
BUSINESSOWNERS COVERAGE FORM

1. **BUSINESSOWNERS COVERAGE FORM TABLE OF CONTENTS** is amended as follows:

   a. The title Electronic Data is changed to Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability.

   b. The title Recording And Distribution Of Material or Information In Violation Of Law is changed to Recording And Distribution Of Material.

2. Paragraph **2.f. Dishonesty** under **SECTION I – EXCLUSIONS** is replaced by the following:

   f. **Dishonesty**

   (1) Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees, directors, trustees, or authorized representatives, whether acting alone or in collusion with each other or with any other party; or

   (2) Theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

   This exclusion applies whether or not an act occurs during your normal hours of operation.

   This exclusion does not apply to acts of destruction by your employees; but theft by your employees is not covered.

   With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

3. **SECTION I — EXTENSIONS OF COVERAGE** is amended as follows:

   a. Paragraph **4.a.(1)** under **Collapse** is replaced by the following:

   (1) Collapse means an abrupt falling down or caving in of a building or any part of a building;

   b. Paragraph **5.** is replaced by the following:

5. **Water Damage, Other Liquids, Powder Or Molten Material Damage**

   If loss caused by covered water or other liquid, powder, or molten material occurs, we will also pay the cost to tear out and replace only that particular part of the covered building or structure necessary to gain access to the specific point of that system or appliance from which the water or other substance escaped.

   We will not pay the cost to repair any defect that caused the loss; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

   a. Results in discharge of any substance from an automatic fire protection system; or

   b. Is directly caused by freezing.

   The amount we pay under this Extension of Coverage will not increase the applicable Limit of Insurance.

   c. Paragraph **13.** is replaced by the following:

   **13. Personal Property Off Premises**

   You may extend the insurance provided by this coverage form to apply to Covered Property, other than "money" and "securities", "valuable papers and records", or accounts receivable, while it is in the course of transit or at another premises. The most we will pay for loss in any one occurrence under this Extension Of Coverage is the Limit Of Insurance for Personal Property Off Premises shown in the Declarations.

   The amount we pay under this Extension Of Coverage is an additional amount of insurance.

   If the Covered Property is located at another premises you own, lease, operate, or regularly use, the insurance provided under this extension applies

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ST-2
0519-2000

92-KB-3489-4       002233

CMP-4528
Page 2 of 5

only if the loss occurs within 90 days after the property is first moved.

The Other Insurance Condition contained in **SECTION I AND SECTION II — COMMON POLICY CONDITIONS** does not apply to this Extension Of Coverage. The insurance provided under this Extension Of Coverage is primary and does not contribute with any other insurance.

**d.** The following is added to Paragraph **22.e.** under **Equipment Breakdown**:

Paragraph **5.b.** under **Coverage B — Business Personal Property** is replaced by:

**b.** Be your responsibility to maintain or insure according to the terms of your lease or rental agreement.

**e.** The following is added:

**Business Personal Property In Portable Storage Units**

You may extend the insurance provided by this coverage form to apply to Business Personal Property, other than "money" and "securities", "valuable papers and records", or accounts receivable, while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the described premises. The most we will pay for loss under this Extension Of Coverage is $10,000.

The amount we pay under this Extension Of Coverage will not increase the applicable Limit Of Insurance.

Coverage will end 90 days after Business Personal Property has been placed in the storage unit. Coverage does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the Business Personal Property has been stored there for 90 or fewer days at the time of loss.

**4. SECTION II — LIABILITY** is amended as follows:

**a. Section II – Exclusions** is amended as follows:

**(1)** The following is added to Paragraph **3. Liquor Liability**:

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring,

employment, training, or monitoring of others by an insured, or providing or failing to provide transportation with respect to any person that may be under the influence of alcohol if the "occurrence" which caused the "bodily injury" or "property damage" involved that which is described in Paragraph **3.a.**

**(2)** Paragraph **8.f.** under **Aircraft, Auto Or Watercraft** is replaced by the following:

**f.** "Bodily injury" or "property damage" arising out of:

**(1)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged;

**(2)** The operation of any of the following machinery or equipment:

**(a)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(b)** Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment; or

**(3)** The operation of your business from a land vehicle:

**(a)** While it is parked and functioning, other than "loading and unloading", as a premises for your business operations; and

**(b)** That would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.



ST-2
0619-2000

CMP-4528
Page 3 of 5

law where it is licensed or principally garaged.

**(3)** Paragraphs **17.b.** and **17.c.** under **Personal And Advertising Injury** are replaced by the following:

    **b.** Arising out of oral or written publication of material, in any manner, if done by or at the direction of the insured with knowledge of its falsity;

    **c.** Arising out of oral or written publication of material, in any manner, whose first publication took place before the beginning of the policy period;

**(4)** The last paragraph of **17.h.** under **Personal And Advertising Injury** is replaced by the following:

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting;

**(5)** Paragraphs **18. Electronic Data** and **19. Recording And Distribution Of Material In Violation Of Law** are replaced by the following:

    **18. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

      **a.** Damages arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, or any other type of nonpublic information; or

      **b.** Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses, or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **a.** or **b.** above.

As used in this exclusion, electronic data means information, facts, or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices, or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve, or send data.

**19. Recording and Distribution of Material**

Damages arising directly or indirectly out of any communication, by or on behalf of any insured, that violates or is alleged to violate:

    **a.** The Telephone Consumer Protection Act (TCPA), CAN-SPAM Act of 2003, Fair Credit Reporting Act (FCRA), or Fair and Accurate Credit Transaction Act (FACTA); including any regulations and any amendment of or addition to such statutes;

    **b.** Any federal, state or local law, statute, ordinance, or regulation, in addition to Paragraph **a.** above, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information; or

    **c.** Any other federal, state or local law, statute, ordinance, or regulation that may provide a basis for a separate claim or cause of action arising out of any communication referenced in Paragraphs **a.** or **b.** above.

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

92-KB-3489-4      002234

CMP-4528
Page 4 of 5

**b.** Paragraph **1.d.(2)** under **Coverage M – Medical Expenses** is replaced by the following:

**(2)** Executes authorization to allow us to obtain copies of medical bills, medical records, and any other information we deem necessary to substantiate the claim.

Such authorizations must not:

**(a)** Restrict us from performing our business functions in:

**i.** Obtaining records, bills, information, and data; or

**ii.** Using or retaining records, bills, information, and data collected or received by us;

**(b)** Require us to violate federal or state laws or regulations;

**(c)** Prevent us from fulfilling our data reporting and data retention obligations to insurance regulators; or

**(d)** Prevent us from disclosing claim information and data:

**i.** To enable performance of our business functions;

**ii.** To meet our reporting obligations to insurance regulators;

**iii.** To meet our reporting obligations to insurance data consolidators; and

**iv.** As otherwise permitted by law.

If the holder of the information refuses to provide it to us despite the authorization, then at our request the person making claim or his or her legal representative must obtain the information and promptly provide it to us; and

**c.** **SECTION II — WHO IS AN INSURED** is amended as follows:

**(1)** Paragraph **1.c.** does not apply.

**(2)** Paragraphs **2.b.(1)** and **(4)** are replaced by the following:

**(1)** "Employees" with respect to "bodily injury" to:

**(a)** Any co-"employee" arising out of and in the course of the co-"employee's" employment or while performing duties related to the conduct of your business; or

**(b)** The spouse, child, parent, brother, or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

**(4)** The owner of a "non-owned auto" or any agent of or any person or entity employed by such owner.

**d.** Paragraph **2.b.** under **Financial Responsibility Laws** of **SECTION II — GENERAL CONDITIONS** does not apply.

**e.** **SECTION II — DEFINITIONS** is amended as follows:

**(1)** Paragraph **2.** is replaced by the following:

**2.** "Auto" means:

**a.** A land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**(2)** The following is added to Paragraph **15.** "mobile equipment":

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

**(3)** Paragraphs **18.f.** and **g.** of "personal and advertising injury" are replaced by the following:

**f.** The use of another's advertising idea in your "advertisement";

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.



CMP-4528
Page 5 of 5



ST-2
0719-2000

   **g.** Infringing upon another's trade dress or slogan in your "advertisement", or

   **h.** Infringement of another's copyright, patent, trademark, or trade secret.

f. The following are added to **SECTION I AND SECTION II – COMMON POLICY CONDITIONS**:

**Our Rights Regarding Claim Information**

   **a.** We will collect, receive, obtain, use, and retain all the items described in Paragraph **b.(1)** below and use and retain the information described in Paragraph **b.(3)(b)** below, in accordance with applicable federal and state laws and regulations and consistent with the performance of our business functions.

   **b.** Subject to Paragraph **a.** above, we will not be restricted in or prohibited from:

     **(1)** Collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

     **(2)** Using any of the items described in Paragraph **b.(1)** above; or

     **(3)** Retaining:

       **(a)** Any of the items in Paragraph **b.(1)** above; or

       **(b)** Any other information we have in our possession as a result of

our processing, handling, or otherwise resolving claims submitted under this policy.

   **c.** We may disclose any of the items in Paragraph **b.(1)** above and any of the information described in Paragraph **b.(3)(b)** above:

     **(1)** To enable performance of our business functions;

     **(2)** To meet our reporting obligations to insurance regulators;

     **(3)** To meet our reporting obligations to insurance data consolidators;

     **(4)** To meet other obligations required by law; and

     **(5)** As otherwise permitted by law.

   **d.** Our rights under Paragraphs **a.**, **b.**, and **c.** above shall not be impaired by any:

     **(1)** Authorization related to any claim submitted under this policy; or

     **(2)** Act or omission of an insured or a legal representative acting on an insured's behalf.

**Electronic Delivery**

With your consent, we may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

All other policy provisions apply.

CMP-4528

©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(CONTINUED)

## FE-8740.1 INLAND MARINE CONDITIONS

Coverage in the Inland Marine Form is primary to any coverage provided in the policy this Form is attached to, for the same property.

The following Conditions also apply:

1. **Agreement.** We agree to provide the insurance described in this policy. You agree to pay premiums when due and comply with the provisions of this policy.

2. **Definitions.** Throughout this policy, the words "you" and "your" refer to the Named Insured and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

3. **Valuation.** The value of covered property will be determined based on the provisions in the applicable coverage form attached.

4. **Loss Payment.** In the event of loss covered by this policy:

   a. We will give notice, within 30 days after we receive the sworn statement of loss, of our intent to settle the loss according to one of the following methods:

      (1) Pay the value of lost or damaged property as determined in the Valuation Condition shown in the applicable coverage form;

      (2) Pay the cost of replacing or repairing the lost or damaged property, plus any reduction in value of repaired items;

      (3) Take all or any part of the property at an agreed or appraised value; or

      (4) Repair, rebuild or replace the property with other property of like kind and quality;

   b. We will not pay you more than your financial interest in the covered property;

   c. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the covered property;

   d. We may elect to defend you, at our expense, against suits arising from claims of owners of property;

   e. We will pay for covered loss within 30 days after we receive the sworn statement of loss, if:

      (1) You have complied with all of the terms of this policy; and

      (2) We have reached agreement with you on the amount of loss or an appraisal award has been made.

5. **Duties in the Event of Loss.** You must see that the following are done in the event of loss to covered property:

   a. Notify the police if a law may have been broken;

   b. Give us prompt notice of the loss. Include a description of the lost or damaged property in the notice;

   c. As soon as possible, give us a description of how, when and where the loss occurred;

   d. Take all reasonable steps to protect the covered property from further damage by an insured loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your emergency and temporary repair expenses for consideration in the settlement of the claim. This will not increase the limit of insurance;

   e. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed;

   f. Permit us to inspect the property and records proving the loss;

   g. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed;

   h. Send us a signed, sworn statement of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms;

   i. Cooperate with us in the investigation or settlement of the claim;

Issued by State Farm Fire and Casualty Company
© Copyright, State Farm Mutual Automobile Insurance Company, 2016
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
CONTINUED

FE-8740.1
Page 2 of 4



ST-2
0819-2000

**j.** Resume all or part of your business activities at the described premises as quickly as possible.

**6. Appraisal.** If you and we disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. Each party will notify the other of the selected appraiser's identity within 20 days after receipt of the written demand for an appraisal. The two appraisers will select an umpire. If the appraisers cannot agree upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**7. Abandonment.** There can be no abandonment of any property to us.

**8. Legal Action Against Us.** No one may bring legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date on which the accidental direct physical loss occurred.

The time for commencing an action is tolled from the time you notify us of the loss until we formally deny liability.

**9. Recovered Property.** If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property subject to the limit of insurance.

**10. No Benefit to Bailee.** No person or organization, other than you, having custody of covered property will benefit from this insurance.

**11. Knowledge or Control.** We will not pay for loss while the chance of loss is increased by any means within your knowledge or control.

**12. Policy Period, Coverage Territory.** We cover loss commencing during the policy period and within or between the coverage territory. The coverage territory is the United States of America (including its territories and possessions), Puerto Rico and Canada.

**13. Changes**

**a.** This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**b.** We may change the Named Insured's policy address as shown in the Declarations and in our records to the most recent address provided to us by:

**(1)** You; or

**(2)** The United States Postal Service.

**14. Concealment, Misrepresentation or Fraud.** This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured intentionally conceal or misrepresent a material fact concerning:

**a.** This policy;

**b.** The covered property;

**c.** Your interest in the covered property; or

**d.** A claim under this policy.

**15. Examination of Your Books and Records.** We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**16. Inspections and Surveys**

**a.** We have the right to:

**(1)** Make inspections and surveys at any time;

Issued by State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2016
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
CONTINUED

(2) Give you reports on the conditions we find; and

(3) Recommend changes.

b. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

(1) Are safe and healthful; or

(2) Comply with laws, regulations, codes or standards.

c. Paragraphs **a.** and **b.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**17. Liberalization.** If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**18. Other Insurance.** If loss covered by this policy is also covered by other insurance written in your name, we will not pay for a greater proportion of the covered loss than this policy's Limit of Insurance bears to the total amount of insurance covering such loss.

**19. Premiums**

a. The first Named Insured shown in the Declarations:

(1) Is responsible for the payment of all premiums; and

(2) Will be the payee for any return premiums we pay.

b. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

c. You may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

(1) Paid to us prior to the anniversary date; and

(2) Determined in accordance with Paragraph **b.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

d. Undeclared exposures, acquisition, or change in your business operation may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**20. Transfer of Rights of Recovery Against Others to Us**. If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a. Prior to a loss to your Covered Property.

b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

(1) Someone insured by this insurance;

(2) A business firm:

(a) Owned or controlled by you; or

(b) That owns or controls you; or

(3) Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

Issued by State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2016
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
CONTINUED



**92-KB-3489-4   002237**

**21. Transfer of Your Rights and Duties Under This Policy.** Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative.

Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**22. Conformity to State Law.** When a provision of this policy is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

FE-8740.1

Issued by State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2016
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ST-2
0919-2000

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CMP-4440 PHYSICIANS AND SURGEONS EQUIPMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SECTION I — PROPERTY** is modified as follows:

1. Paragraph **3.b.** under **Property Subject To Limitations** is replaced by the following:

   **b.** $2,500 for jewelry and watches, watch movements, jewels, pearls, precious and semi-precious stones and radium. This limitation does not apply to jewelry and watches worth $100 or less per item;

2. The following is added to **SECTION I — EXTENSIONS OF COVERAGE**:

   **Physicians And Surgeons Equipment**

   You may extend the insurance that applies to Business Personal Property to apply to accidental direct physical loss, by a Covered Cause Of Loss, to medical, surgical and dental equipment and instruments (including tools, materials, supplies and scientific books) used by the insured in the medical or dental profession, while it is in the course of transit or at another premises you do not own, lease or operate.

   There is no coverage under any other Extension Of Coverage to the extent that coverage is provided by this Extension Of Coverage. The amount we pay under this Extension Of Coverage will not increase the applicable Limit Of Insurance.

All other policy provisions apply.

CMP-4440

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(CONTINUED)



92-KB-3489-4     002237

## FE-8774.1 INLAND MARINE COMPUTER PROPERTY FORM

### INSURING AGREEMENT

We will pay for accidental direct physical loss to:

1. "Computer equipment", used in your business operations, that you own, lease from others, rent from others, or that is loaned to you. However, we do not insure "computer equipment" used to operate or control vehicles.

2. Removable data storage media used in your business operations to store "electronic data".

We do not insure property you lease to others or rent to others.

We do not insure "computer programs" or "electronic data" except as provided in the Computer Programs And Electronic Data Extension Of Coverage.

### LIMIT OF INSURANCE

We will pay for all covered loss up to the limits shown on the Schedule Page.

### DEDUCTIBLE

The deductible amount shown on the Schedule Page will only apply to the property covered under this form. This amount will be deducted from the amount of any loss under this coverage.

### EXCLUSIONS

1. We do not insure under any coverage for any loss to any property while in transit as checked baggage on a commercial airline;

2. We do not insure for loss either consisting of, or caused by, one or more of the following:

    a. Errors and omissions in programming. However, we do insure for any resulting loss unless the resulting loss itself is excluded;

    b. Faulty, inadequate, unsound or defective design, specifications, workmanship, or repair. However, we do insure for any resulting loss unless the resulting loss itself is excluded;

    c. Wear, tear, marring, scratching, rust, corrosion or deterioration. However, we do insure for any resulting loss unless the resulting loss itself is excluded;

    d. Property that is missing, where the only evidence of the loss is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property;

    e. Any dishonest or criminal act occurring at any time by you, any of your partners, employees, directors, or trustees;

    f. Hidden or latent defect or any quality in property that causes it to damage or destroy itself. However, we do insure for any resulting loss unless the resulting loss itself is excluded; or

    g. Obsolescence;

3. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

    a. **Fungi**

    Growth, proliferation, spread or presence of "fungi", including:

    (1) Any loss of use or delay in repairing or replacing covered property, including any associated cost or expense, due to interference at the location of the covered property or at the location of the repair or replacement of that property by "fungi";

    (2) Any remediation of "fungi", including the cost or expense to:

        (a) Remove the "fungi" from covered property or to repair, restore or replace that property;

        (b) Take apart and repair any property as needed to gain access to the "fungi";

        (c) Contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the "fungi"; or

FE-8774.1
Page 2 of 4

**(d)** Remove any property to protect it from the presence of or exposure to "fungi"; and

**(3)** The cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of "fungi", whether performed prior to, during, or after removal, repair, restoration or replacement of covered property.

#### b. Governmental Action

Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread.

#### c. Nuclear Hazard

Nuclear reaction or radiation, or radioactive contamination. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion or smoke.

But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the loss caused by that fire.

#### d. War And Military Action

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

### EXTENSIONS OF COVERAGE

#### 1. Computer Programs And Electronic Data

**a.** We will pay for accidental direct loss to:

**(1)** The following types of "computer programs" and "electronic data" that you own, license from others, lease from others, or rent from others:

**(a)** "Computer programs" used in your business operations; or

**(b)** The "electronic data" that exists in "computer" memory or on "computer" storage media, used in your business operations.

**(2)** That portion of your customers' "electronic data" that is supplied to you for

processing or other use in your business operations. Coverage for customers' "electronic data" is limited to the specific data file(s) containing the information you are processing or using in your business operations.

We do not cover any property you lease to others, rent to others or license to others. We do not cover "computer equipment" or removable data storage media under this Extension Of Coverage. This coverage extension is included in the Limit Of Insurance shown on the Schedule Page.

Loss does not include any consequential loss except as may be provided in the optional Loss Of Income And Extra Expense coverage.

**b.** All items under the EXCLUSIONS section of this form apply to this Extension Of Coverage except:

**(1)** Item **a.** in Paragraph **2.** does not apply to:

**(a)** "Computer programs" other than the program in which the error or omission in programming occurs; and

**(b)** "Electronic data";

covered under this extension;

**(2)** Item **b.** in Paragraph **2.** does not apply to "electronic data" covered under this extension; and

**(3)** Items **c.** and **d.** in Paragraph **2.** do not apply to "computer programs" and "electronic data" covered under this extension.

**c.** We do not provide coverage for loss to, or loss of value resulting from infringement of, your intellectual property rights.

#### 2. Fire Protection Devices

We will cover your expense, for up to $25,000, to recharge or refill any fire protection devices which have been discharged to protect the covered property.

The amount we pay under this Extension Of Coverage is an additional amount of insurance and is not subject to a deductible.

#### 3. Debris Removal

We will cover your expense to remove the debris of covered property, caused by Covered Cause Of Loss.

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2013
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
CONTINUED

ST-2
1019-2000

The amount we pay under this Extension Of Coverage will not increase the applicable Limit Of Insurance.

## SPECIAL CONDITIONS

### 1. Valuation

We agree all losses to:

a. "Computer equipment" will be determined based on the cost to repair or replace with that of similar performance, capacity or function.

b. Removable data storage media will be determined based on the cost to repair or replace that media with blank media of similar performance, capacity or function.

c. "Computer programs":

(1) That are commercial off-the-shelf will be determined based on the cost to repair or replace with that of similar performance, capacity or function; or

(2) That are not commercial off-the-shelf will be determined based on the cost of reproducing the programs if they are reproduced. If not reproduced, loss will be determined based on the cost of blank, readily available, removable data storage media, such as blank discs, with suitable capacity to store the programs.

d. "Electronic data" will be determined based on the cost of reproducing the data, if it is reproduced. If not reproduced, loss will be determined based on the cost of blank, readily available, removable data storage media, such as blank discs, with suitable capacity to store the data.

### 2. One Loss

If an initial loss causes other losses, all will be considered one loss. All losses that are the result of the same event will be considered one loss.

## OPTIONAL COVERAGE – LOSS OF INCOME AND EXTRA EXPENSE

1. If a limit is shown on the Inland Marine Schedule Page for Loss Of Income And Extra Expense, coverage under this form is provided, subject to that limit, for the following:

a. The actual "Loss Of Income" you sustain due to the necessary "suspension" of your operations during the "period of restoration". The "suspension" must be caused by damage or destruction to property covered under this form, by a Covered Cause Of Loss; and

b. Any necessary "extra expense" you incur during the "period of restoration" that you would not have incurred if there had been no damage or destruction to property covered under this form, by a Covered Cause Of Loss.

We will only pay for "Loss Of Income" or "extra expense" that you sustain during the "period of restoration" that occurs within 12 consecutive months after the date of loss. We will only pay for "ordinary payroll expenses" for 90 days following the date of loss.

2. We will not pay for:

a. Any "extra expense" or increase of "Loss Of Income" caused by suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of your operations, we will cover such loss that affects your "Loss Of Income" during the "period of restoration";

b. Any "extra expense" caused by suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration";

c. Any other consequential loss; or

d. Loss caused by seizure or destruction of property by order of governmental authority. But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread.

## DEFINITIONS

1. "Computer" means:

a. Programmable electronic equipment that is used to store, retrieve and process data; and

b. Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" does not include those used to operate production type machinery or equipment.

2. "Computer equipment" means "computers", "computer" cables and wiring not attached to or forming a part of a building, and equipment manuals. "Computer equipment" does not mean other types of devices with internal computing capability, such as intelligent devices that contain an embedded chip or some other form of logic circuitry, or the computing components in those devices.

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2013
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
CONTINUED

FE-8774.1
Page 4 of 4

3. "Computer programs" means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

4. "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from "computer" software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of "computer" software which are used with electronically controlled equipment.

5. "Extra expense" means expense incurred:

    a. To avoid or minimize the "suspension" of business and to continue operations.

    b. To minimize the "suspension" of business if you cannot continue operations.

    c. To repair or replace any property to the extent it reduces the amount of loss that would otherwise have been payable under this coverage or "Loss Of Income" coverage.

6. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungus.

7. "Loss Of Income" means the sum of the amounts as described in **a.** and **b.** below:

    a. Net income (net profit or loss before income taxes) that would have been earned or incurred if no accidental direct loss had occurred, including:

        (1) "Rental value";

        (2) "Maintenance fees", if you are a condominium association or other similar community association;

        (3) Total receipts and contributions (less operating expenses) normally received during the period of disruption of operations; and

        (4) Tuition and fees from students, including fees from room, board, laboratories and other similar sources.

    b. Continuing normal operating expenses incurred, including "ordinary payroll expenses".

    Net income does not include any net income that would likely have been earned as a result

of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause Of Loss on customers or on other businesses.

8. "Maintenance fees" means the regular payment made to you by unit-owners and used to service the common property.

9. "Ordinary payroll expenses":

    a. Mean payroll expenses for all your employees except:

        (1) Officers;

        (2) Executives;

        (3) Department Managers; and

        (4) Employees under contract;

    b. Include:

        (1) Payroll;

        (2) Employee benefits, if directly related to payroll;

        (3) FICA payments you pay;

        (4) Union dues you pay; and

        (5) Workers' compensation premiums.

10. "Period of restoration" means the period of time that:

    a. Begins immediately after the time of loss to property covered by this form; and

    b. Ends on the date when the property covered by this form should be repaired, rebuilt, restored or replaced with reasonable speed and similar quality.

    The expiration date of this policy will not cut short the "period of restoration".

11. "Rental value" means:

    a. The total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you;

    b. The amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations; and

    c. The fair rental value of any portion of the described premises which is occupied by you.

12. "Suspension" means the partial slowdown or complete cessation of your business activities.

FE-8774.1

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2013
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(CONTINUED)

ST-2
1119-2000

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CMP-4905.1 LOSS OF INCOME AND EXTRA EXPENSE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The coverage provided by this endorsement is subject to the provisions of **SECTION I — PROP-ERTY**, except as provided below.

### COVERAGES

**1. Loss Of Income**

   **a.** We will pay for the actual "Loss Of Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause Of Loss. With respect to loss to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

   With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, then the described premises means:

   **(1)** The portion of the building which you rent, lease or occupy; and

   **(2)** Any area within the building or on the site at which the described premises are located, if that area is the only such area that:

   **(a)** Services; or

   **(b)** Is used to gain access to;

   the described premises.

   **b.** We will only pay for "Loss Of Income" that you sustain during the "period of restoration" that occurs after the date of accidental direct physical loss and within the number of consecutive months for Loss Of Income And Extra Expense shown in the Declarations. We will only pay for "ordinary payroll expenses" for 90 days following the date of accidental direct physical loss.

**2. Extra Expense**

   **a.** We will pay necessary "Extra Expense" you incur during the "period of restoration" that you would not have incurred if there had

been no accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause Of Loss. With respect to loss to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, then the described premises means:

   **(1)** The portion of the building which you rent, lease or occupy; and

   **(2)** Any area within the building or on the site at which the described premises are located, if that area is the only such area that:

   **(a)** Services; or

   **(b)** Is used to gain access to;

   the described premises.

   **b.** We will only pay for "Extra Expense" that occurs after the date of accidental direct physical loss and within the number of consecutive months for Loss Of Income And Extra Expense shown in the Declarations.

**3. Extended Loss Of Income**

   **a.** If the necessary "suspension" of your "operations" produces a "Loss Of Income" payable under this policy, we will pay for the actual "Loss Of Income" you incur during the period that:

   **(1)** Begins on the date property, except finished stock, is actually repaired, rebuilt or replaced and "operations" are resumed; and

   **(2)** Ends on the earlier of:

   **(a)** The date you could restore your "operations", with reasonable speed, to the level which would generate the Net Income amount that would have existed if no accidental direct physical loss had occurred; or

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.



CMP-4905.1
Page 2 of 4

ST-2
1219-2000

**(b)** 60 consecutive days after the date determined in Paragraph **a.(1)** above.

However, Extended Loss Of Income does not apply to "Loss Of Income" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause Of Loss in the area where the described premises are located.

**b.** "Loss Of Income" must be caused by accidental direct physical loss at the described premises caused by any Covered Cause Of Loss.

**4. Civil Authority**

**a.** When a Covered Cause Of Loss causes damage to property other than property at the described premises, we will pay for the actual "Loss Of Income" you sustain and necessary "Extra Expense" caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

**b.** Civil Authority coverage for "Loss Of Income" will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

**c.** Civil Authority coverage for necessary "Extra Expense" will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority coverage for "Loss Of Income" ends;

whichever is later.

**EXTENSIONS OF COVERAGE**

**1. Newly Acquired Property**

**a.** You may extend the insurance provided by this endorsement to apply to newly acquired or constructed property covered as described in Paragraph **12.** of **SECTION I — EXTENSIONS OF COVERAGE** of your policy.

**b.** The most we will pay in any one occurrence under this coverage for "Loss Of Income" and necessary "Extra Expense" is the actual loss you sustain.

**2. Interruption Of Web Site Operations**

**a.** You may extend the insurance provided by this endorsement to apply to the necessary interruption of your business. The interruption must be caused by an accidental direct physical loss to your Web Site Operations at the premises of a vendor acting as your service provider.

Such interruption must be caused by a Covered Cause Of Loss other than a loss covered under Equipment Breakdown Extension Of Coverage of your Businessowners Coverage Form.

**(1)** Coverage Time Period

We will only pay for loss you sustain during the seven-day period immediately following the first 12 hours after the Covered Cause Of Loss.

**(2)** Conditions

**(a)** This coverage applies only if you have a back-up copy of your Web Site stored at a location other than the site of the Web Site vendor and to the extent "Loss Of Income" is permanently lost.

**(b)** Notwithstanding any provision to the contrary, the coverage provided under this Interruption Of Web Site Operations Extension Of Coverage is primary to any LOSS OF INCOME AND EXTRA EXPENSE coverage provided by the **Inland Marine Computer Property Form**.

**b.** The most we will pay in any one occurrence under this coverage is $10,000.



State Farm Fire and Casualty Company
© Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

### 3. Off Premises – Loss Of Income

a. You may extend the insurance provided by this endorsement to apply to the necessary "suspension" of your business. The "suspension" must be caused by an accidental direct physical loss to your Covered Property while it is in the course of transit or at another premises.

If the Covered Property is located at another premises you own, lease, operate, or regularly use, the insurance provided under this extension applies only if the loss occurs within 90 days after the property is first moved.

We will only pay for loss you sustain during the period beginning immediately after the time of accidental direct physical loss caused by any Covered Cause Of Loss and ending when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

b. The most we will pay in any one occurrence under this coverage is $20,000.

### EXCLUSIONS

We will not pay for:

1. Any "Extra Expense", or increase of "Loss Of Income", caused by:

a. Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers, picketers, or any others charged with rebuilding, repairing, or replacing property; or

b. Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of your "operations", we will cover such loss that affects your "Loss Of Income" during the "period of restoration".

2. Any other consequential loss.

### CONDITION

#### Resumption Of Operations

We will reduce the amount of your:

1. "Loss Of Income", other than "Extra Expense", to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

2. "Extra Expense" loss to the extent you can return "operations" to normal and discontinue such "Extra Expense".

### DEDUCTIBLE

No deductible applies to the coverage provisions provided in this "Loss Of Income" endorsement.

However, for any loss covered under Paragraph **22.b.(4)** of the Equipment Breakdown Extension Of Coverage of your policy, the Special Deductible for Equipment Breakdown will apply to this "Loss Of Income".

### DEFINITIONS

1. "Extra Expense" means expense incurred:

a. To avoid or minimize the "suspension" of business and to continue "operations":

(1) At the described premises; or

(2) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

b. To minimize the "suspension" of business if you cannot continue "operations"; or

c. To:

(1) Repair or replace any property; or

(2) Research, replace or restore the lost information on damaged "valuable papers and records"

to the extent it reduces the amount of loss that otherwise would have been payable under this coverage or "Loss Of Income" coverage.

2. "Loss Of Income" means the sum of the amounts as described in **a.** and **b.** below:

a. Net Income (net profit or loss before income taxes) that would have been earned or incurred if no accidental direct physical loss had occurred, including:

(1) "Rental value";

(2) "Maintenance fees", if you are a condominium association or other similar community association;

(3) Total receipts and contributions (less operating expenses) normally received during the period of disruption of operations; and

(4) Tuition and fees from students, including fees from room, board, laboratories and other similar sources.

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CMP-4905.1
Page 4 of 4

ST-2
1319-2000

Net Income does not include any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause Of Loss on customers or on other businesses; and

**b.** Continuing normal operating expenses incurred, including "ordinary payroll expenses".

**3.** "Maintenance fees" means the regular payment made to you by unit-owners and used to service the common property.

**4.** "Operations" means your business activities occurring at the described premises.

**5.** "Ordinary payroll expenses":

  **a.** Mean payroll expenses for all your employees except:

   **(1)** Officers;

   **(2)** Executives;

   **(3)** Department Managers; and

   **(4)** Employees under contract.

  **b.** Include:

   **(1)** Payroll;

   **(2)** Employee benefits, if directly related to payroll;

   **(3)** FICA payments you pay;

   **(4)** Union dues you pay; and

   **(5)** Workers' compensation premiums.

**6.** "Period of restoration":

  **a.** Means the period of time that;

   **(1)** Begins immediately after the time of accidental direct physical loss caused by any Covered Cause Of Loss at the described premises; and

   **(2)** Ends on the earlier of:

CMP-4905.1

   **(a)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

   **(b)** The date when business is resumed at a new permanent location.

  **b.** Does not include any increased period required due to the enforcement of any ordinance or law that:

   **(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

   **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**7.** "Rental value" means:

  **a.** The total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you;

  **b.** The amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations; and

  **c.** The fair rental value of any portion of the described premises which is occupied by you.

**8.** "Suspension" means:

  **a.** The partial slowdown or complete cessation of your business activities; or

  **b.** That a part or all of the described premises is rendered untenantable, if coverage for "Loss Of Income" applies.

All other policy provisions apply.

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(CONTINUED)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CMP-4222.3 AMENDATORY ENDORSEMENT (Michigan)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

1. **SECTION I — CONDITIONS** is amended as follows:

   a. Paragraph **1.b. Appraisal** is replaced by the following:

      **b. Appraisal**

      If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and independent appraiser. Each party will notify the other of the selected appraiser's identity within 20 days after receipt of the written demand for an appraisal. The two appraisers will select an umpire. If the appraisers cannot agree upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

      **(1)** Pay its chosen appraiser; and

      **(2)** Bear the other expenses of the appraisal and umpire equally.

      If there is an appraisal, we will still retain our right to deny the claim.

   b. The following is added to Paragraph **1.d.**:

      The time for commencing an action is tolled from the time you notify us of the loss until we formally deny liability.

   c. Paragraph **2.b.(6)** under Mortgageholders is replaced by the following:

      **(6)** If we cancel this policy, we will give written notice to the mortgageholder at least 10 days before the effective date of cancellation.

   d. The following is added to Paragraph **1.e.** Loss Payment and **2.b.** Mortgageholders:

   If a municipality has elected to apply the provisions of the Michigan Fire Insurance Withholding Program, a part of our payment for fire, explosion, vandalism, windstorm or hail, or riot or civil commotion loss to your covered real property in that municipality will be withheld if the loss is subject to the provisions of the Act. The withheld amount will be paid either to:

   **(a)** The municipality;

   **(b)** You and the mortgageholder, if any; or

   **(c)** With your consent, the licensed contractor hired by you to perform repair, replacement, or removal services on the lost or damaged real property;

   according to the provisions of the Program. We will notify you, any mortgageholder and the municipality of any loss subject to the provisions.

   If a municipality has elected to apply the provisions of Michigan Insurance Code 500.3011, any further payment for claims for loss to your covered property caused by fire or explosion of $2,000 or more will be withheld if you have failed to submit a required report to the fire or law enforcement authority designated by the municipality.

2. **SECTION II** is amended as follows:

   a. Paragraph **1.f.** of **Section II – Supplementary Payments** is replaced by the following:

      **f.** Prejudgment interest awarded against the insured on the part of the judgment we pay.

   b. The following is added to Paragraph **3.b.** under Duties In The Event Of Occurrence, Offense, Claim Or Suit of **SECTION II — GENERAL CONDITIONS** is replaced by the following:

      Notice given by or on behalf of the insured to our authorized agent, with particulars sufficient to identify the insured, shall be considered notice to us.

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.





ST-2
1419-2000

CMP-4222.3
Page 2 of 3

**c.** The following is added to Paragraph **3.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of **SECTION II — GENERAL CONDITIONS**:

    **e.** Failure to:

        **(1)** Give us notice of an "occurrence", offense, claim or "suit" as soon as practicable; or

        **(2)** Immediately send us copies of demands, notices, summonses or legal papers received in connection with the claim or "suit";

    shall not invalidate the claim made by you if it shall be shown that it was not reasonably possible to give us notice as soon as practicable or to immediately send us copies, and that you gave us notice and sent us copies as soon as was reasonably possible.

**3.** Paragraph **8. Premiums** under **SECTION I AND SECTION II — COMMON POLICY CONDITIONS** is replaced by the following:

    **8. Premiums**

    **a.** The first Named Insured shown in the Declarations:

        **(1)** Is responsible for the payment of all premiums; and

        **(2)** Will be the payee for any return premiums we pay.

    **b.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

    **c.** Unless otherwise provided by an alternative payment plan in effect with "State Farm Companies", you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

        **(1)** Paid to us prior to the anniversary date; and

        **(2)** Determined in accordance with Paragraph **b.** above.

    Our forms then in effect will apply.

    **d.** Undeclared exposures or change in your business operation, acquisition, or use of premises may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

When you request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, we may adjust the premium in accordance with the change during the policy period and you must pay any additional premium due within the time we specify.

    **e.** The premium for this policy may vary based upon:

        **(1)** The purchase of other insurance from the "State Farm Companies".

        **(2)** The purchase of products or services from an organization that has entered into an agreement or contract with the "State Farm Companies". The "State Farm Companies" do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

        **(3)** An agreement, concerning the insurance provided by this policy, that the "State Farm Companies" has with an organization in which you have a membership, or of which you are a subscriber, licensee, or franchisee.

    **f.** Your purchase of this policy may allow:

        **(1)** You to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the "State Farm Companies", subject to their applicable eligibility rules; or

        **(2)** The premium or price for other products or services purchased by you, including non-insurance products or services, to vary. Such other products or services must be provided by the "State Farm Companies" or by an organization that has entered into an agreement or contract with the "State Farm Companies". The "State Farm Companies" do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

92-KB-3489-4    002242

**4.** The following are added to **SECTION I AND SECTION II — COMMON POLICY CONDITIONS**:

### Cancellation

**a.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us or our authorized agent advance written notice of cancellation.

**b.** We or our authorized agent may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**c.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**d.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us or our authorized agent. Postage will be fully prepaid. If notice is mailed, proof of mailing will be sufficient proof of notice.

**e.** If this policy is cancelled, we will send the first Named Insured any pro rata premium refund due. The minimum earned premium will not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**f.** If this policy insured more than one Named Insured:

   **(1)** The first Named Insured may affect cancellation for the account of all insureds; and

   **(2)** Our notice of cancellation to the first Named Insured is notice to all insureds. Payment of unearned premium to the first Named Insured is for the account of all interests therein.

### When We Do Not Renew

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations, or our authorized agent, written notice of the nonrenewal at least 30 days before the expiration date.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us or our authorized agent. If notice is mailed, proof of mailing will be sufficient proof of notice.

All other policy provisions apply.

CMP-4222.3

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(CONTINUED)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.



## CMP-4910 EMPLOYEE DISHONESTY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added as an Extension of Coverage under **SECTION I — EXTENSIONS OF COVERAGE**.

### Employee Dishonesty

1. We will pay for direct physical loss to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your "employees" acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

   a. Cause you to sustain loss; and

   b. Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other "employee" benefits earned in the normal course of employment) for:

      (1) Any "employee"; or

      (2) Any other person or organization intended by that "employee" to receive that benefit.

2. The most we will pay for loss under this Coverage in any one occurrence, regardless of the number of described premises, is the Limit Of Insurance for Employee Dishonesty shown in the Declarations, even if the occurrence includes more than one policy period.

   The amount we pay under this Extension of Coverage is an additional amount of insurance.

   Regardless of the amount of the Basic Deductible, the most we will deduct from any loss under this Extension of Coverage in any one occurrence is the applicable deductible listed for Employee Dishonesty under Special Deductibles shown in the Declarations.

3. We will determine the value of:

   a. "Money" at its face value; and

   b. "Securities" at their value at the close of business on the day the loss is discovered.

4. All loss:

   a. Caused by one or more persons; or

   b. Involving a single act or series of acts;

   is considered one occurrence.

5. With respect to coverage provided by this endorsement:

   a. Paragraph **2.** of **Property Not Covered** does not apply.

   b. Paragraph **1.d.** of **Property Subject To Limitations** does not apply.

   c. Paragraph **2.f.** of **SECTION I — EXCLUSIONS** does not apply.

   d. The first paragraph under **SECTION I — EXTENSIONS OF COVERAGE** does not apply.

6. We will not pay for loss:

   a. Resulting from any dishonest or criminal act that you or any of your partners commit whether acting alone or in collusion with other persons.

   b. When the only proof of its existence or amount is:

      (1) An inventory computation; or

      (2) A profit and loss computation.

7. This Coverage does not apply to any "employee" immediately upon discovery by:

   a. You; or

   b. Any of your partners, "members", "managers", officers, directors, or trustees not in collusion with the "employee";

   of any dishonest act committed by that "employee" before or after being hired by you.

8. We will pay only for loss you sustain through acts committed or events occurring during the policy period.

   These acts must be discovered no later than one year from the end of the policy period.

9. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit Of Insurance cumulates from year to year or period to period.

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
CONTINUED

ST-2
1519-2000

**10.** If any loss is covered:

  **a.** Partly by this insurance; and

  **b.** Partly by any prior cancelled or terminated insurance or expired policy period that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

**11.** If you (or any predecessor in interest) sustained loss during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this Coverage, provided:

  **a.** This Coverage became effective at the time of cancellation or termination of the prior insurance; and

  **b.** The loss would have been covered by this Coverage had it been in effect when the acts or events causing the loss were committed or occurred.

**12.** The insurance under Paragraph **11.** above is part of, not in addition to, the Limit Of Insurance applying to this Coverage and is limited to the lesser of the amount recoverable under:

  **a.** This Coverage as of its effective date; or

  **b.** The prior insurance had it remained in effect.

**13.** With respect to this Coverage "employee" means:

  **a.** Any natural person:

    **(1)** While in your service or for 30 days after termination of service;

    **(2)** Who you compensate directly by salary, wages or commissions; and

    **(3)** Who you have the right to direct and control while performing services for you;

  **b.** Any "manager", director, officer or trustee, whether compensated or not, except while performing acts outside the scope of their normal duties;

  **c.** Any natural person who is furnished temporarily to you:

    **(1)** To substitute for a permanent "employee" as described in Paragraph **a.** above, who is on leave; or

    **(2)** To meet seasonal or short-term work load conditions;

  **d.** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary "employee" as described in Paragraph **c.** above;

  **e.** Any natural person who is a former "employee", director, officer, partner, "member", "manager", representative or trustee retained as a consultant while performing services for you; or

  **f.** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But this does not include any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character.

All other policy provisions apply.

CMP-4910

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(CONTINUED)

CMP-4941
Page 1 of 2

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

ST-2
1619-2000

## CMP-4941 SPOILAGE COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions apply to the coverage provided by this endorsement:

Under **SECTION I — EXTENSIONS OF COVERAGE**, the following is added:

**Spoilage**

1. You may extend the insurance that applies to Business Personal Property to accidental direct physical loss to "perishable goods", caused by:

   **a**. Breakdown, meaning a change in temperature, humidity or pressure resulting from mechanical breakdown or mechanical failure to refrigerating, cooling or humidity control equipment.

   Mechanical breakdown and mechanical failure do not mean power interruption, regardless of how or where the interruption is caused and whether or not the interruption is complete or partial;

   **b.** Contamination by a refrigerant; or

   **c.** Power Outage, meaning a change in temperature, humidity or pressure resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

2. We will also pay for the reasonable cost you incur to avoid the imminent spoilage of your "perishable goods" resulting from mechanical breakdown or mechanical failure to refrigerating, cooling or humidity control equipment on transporting conveyances that you own or lease, but are not at a premises you own, lease or operate.

   This cost will only include:

   **a.** Expenses of a replacement vehicle, including the additional wages of the driver of that replacement vehicle;

   **b.** Wages for laborers to unload the disabled vehicle and reload the replacement vehicle; and

   **c.** Expenses for temporary storage in cold storage facilities while awaiting disposition of the product.

3. **SECTION I — EXCLUSIONS** is amended by the following:

   **a.** Of the exclusions listed in Paragraph **1.** under **SECTION I — EXCLUSIONS**, only the following apply to this Spoilage Coverage Extension:

   **(1)** Earth Movement;

   **(2)** Volcanic Eruption;

   **(3)** Governmental Action;

   **(4)** Nuclear Hazard;

   **(5)** War And Military Action; and

   **(6)** Water.

   **b.** To the extent that coverage is provided by this endorsement, Exclusions **2.a.**, **2.j.**, **2.l.(6)**, **2.l.(7)(a)**, and **2.l.(7)(b)** do not apply.

4. The following additional exclusion applies:

   We do not insure for loss whether consisting of, or directly and immediately caused by, one or more of the following:

   **a.** The disconnection of any refrigerating, cooling or humidity control equipment from their source of power.

   **b.** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

   **c.** The inability of an electrical utility company or other power source to provide sufficient power due to:

   **(1)** Lack of fuel; or

   **(2)** Governmental order.

   **d.** The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
CONTINUED

CMP-4941
Page 2 of 2

e. Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control equipment.

5. The most we will pay under this Spoilage Coverage endorsement is the Limit Of Insurance shown in the Declarations under:

a. Spoilage – On Premises, for any loss covered under Paragraph **1.** of this endorsement, where the loss to "perishable goods" occurs at the described premises.

b. Spoilage – Off Premises, for any loss covered under Paragraph **1.** of this endorsement, where the loss to "perishable goods"

occurs at a premises you do not own, lease or operate.

c. Spoilage – Expediting Expense, for any costs covered under Paragraph **2.** of this endorsement.

The amount we pay under this Extension Of Coverage will not increase the applicable Limit Of Insurance.

However, there is no coverage under this Spoilage Extension Of Coverage to the extent coverage is provided under the Equipment Breakdown Extension of Coverage.

All other policy provisions apply.

CMP-4941

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FE-3653
Page 1 of 1

## FE-3653 ACTUAL CASH VALUE ENDORSEMENT

The following is added to any provision which uses the term "actual cash value":

Actual cash value means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

1. materials, including any tax;
2. labor, including any tax; and
3. overhead and profit;

are subject to depreciation.

The depreciation deduction may include such considerations as:

1. age;
2. condition;
3. reduction in useful life;
4. obsolescence; and
5. any pre-loss damage including wear, tear, or deterioration;

of the damaged part of the property.

All other policy provisions apply.

FE-3653

Issued by State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

(CONTINUED)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CMP-4909 MONEY AND SECURITIES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added as an Extension of Coverage under **SECTION I — EXTENSIONS OF COVERAGE**.

### Money And Securities

**1.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

  **a.** Theft, meaning any act of stealing;

  **b.** Disappearance; or

  **c.** Destruction.

**2.** The most we will pay for loss to "money" and "securities" in any one occurrence under this Coverage is:

  **a.** The Limit Of Insurance for Money And Securities (On Premises) shown in the Declarations while:

    **(1)** In or at the described premises; or

    **(2)** Within a bank or savings institution; and

  **b.** The Limit Of Insurance for Money And Securities (Off Premises) shown in the Declarations while anywhere else.

The amount we pay under this Extension of Coverage is an additional amount of insurance.

Regardless of the amount of the Basic Deductible, the most we will deduct from any loss under this Extension of Coverage in any one occurrence is the applicable deductible listed for Money And Securities under Special Deductibles shown in the Declarations.

CMP-4909

**3.** We will determine the value of:

  **a.** "Money" at its face value; and

  **b.** "Securities" at their value at the close of business on the day the loss is discovered.

**4.** With respect to coverage provided by this endorsement:

  **a.** Paragraph **2.** of **Property Not Covered** does not apply.

  **b.** Paragraphs **1.c.** and **1.d.** of **Property Subject To Limitations** does not apply.

**5.** All loss:

  **a.** Caused by one or more persons; or

  **b.** Involving a single act or series of related acts;

is considered one occurrence.

**6.** We will not pay under this Extension Of Coverage for loss consisting of one or more of the following:

  **a.** Resulting from accounting or arithmetical errors or omissions;

  **b.** Due to the giving or surrendering of property in any exchange or purchase; or

  **c.** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**7.** You must keep records of all "money" and "securities" so we can verify the amount of any loss.

All other policy provisions apply.

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ST-2
1719-2000



(CONTINUED)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CMP-4904.1 DEPENDENT PROPERTY — LOSS OF INCOME

This endorsement modifies insurance provided under the following:

LOSS OF INCOME AND EXTRA EXPENSE

The following coverage is added to the **EXTENSIONS OF COVERAGE**:

### Dependent Properties

**a.** We will pay for the "Loss Of Income" and any necessary "Extra Expense" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by an accidental direct physical loss to "dependent property" caused by a Covered Cause Of Loss.

However, coverage under this endorsement does not apply when the only loss to "dependent property" is loss to "electronic data", including destruction or corruption of "electronic data". If the "dependent property" sustains loss to "electronic data" and other property, coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay in any one occurrence under this endorsement, regardless of the number of described premises, is the Limit Of Insurance for Dependent Property — Loss Of Income shown in the Declarations.

**b.** We will reduce the amount payable under this endorsement to the extent you can resume "operations", in whole or in part, by using any other available:

**(1)** Source of materials; or

**(2)** Outlet for your products.

**c.** With respect to this endorsement the following definitions are added:

**(1)** "Dependent property" means property owned by others whom you depend on to:

**(a)** Deliver materials or services to you or to others for your account. But services does not mean water supply services, power supply services, or communication services, including services relating to internet access or access to any electronic network;

**(b)** Accept your products or services;

**(c)** Manufacture your products for delivery to your customers under contract for sale; or

**(d)** Attract customers to your business.

The "dependent property" must be located in the coverage territory of this policy.

**(2)** "Period of restoration", with respect to dependent property, means the period of time that:

**(a)** Begins immediately after the time of accidental direct physical loss caused by any Covered Cause Of Loss at the premises of the dependent property; and

**(b)** Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

The "period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the "period of restoration".

All other policy provisions apply.

CMP-4904.1

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(CONTINUED)

CMP-4906
Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CMP-4906 BACK-UP OF SEWER OR DRAIN

ST-2
1819-2000

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

1. We will pay for accidental direct physical loss to Covered Property described under **Coverage B – Business Personal Property** directly and immediately caused solely by water or sewage:

    a. That enters through a sewer or drain located inside the interior of the structure; or

    b. Which enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the structure, designed to remove subsurface water drained from the foundation area.

2. Coverage provided by this endorsement does not apply if:

    a. You fail to keep a sump pump or its related equipment in proper working condition;

    b. You fail to perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions; or

    c. The loss occurs, or is in progress within the first 5 days of the inception of this endorsement. However, this provision does not apply when the coverage is continued as part of your policy renewal.

3. The most we will pay for loss in any one occurrence, at the described premises, under this endorsement is the Limit Of Insurance for Back-up Of Sewer Or Drain shown in the Declarations.

    The amount that we pay under this endorsement is an additional amount of insurance.

4. With respect to the coverage provided under this endorsement, Paragraph **1.h.** Water of **SECTION I — EXCLUSIONS** is replaced by the following:

    h. **Water**

        (1) Flood, surface water, waves (including tidal wave, tsunami, and seiche), tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not, except as specifically provided in the BACK-UP OF SEWER OR DRAIN endorsement;

        (2) Mudslide or mudflow;

        (3) Water or sewage that backs up or overflows from a sewer, drain or sump, except as specifically provided in the BACK-UP OF SEWER OR DRAIN endorsement;

        (4) Water or sewage under the ground surface pressing on, or flowing or seeping through:

            (a) Foundations, walls, floors or paved surfaces;

            (b) Basements, whether paved or not; or

            (c) Doors, windows or other openings; or

        (5) Material carried or otherwise moved by any of the Water, as described in Paragraphs **(1)** through **(4)** above.

        But if Water, as described in Paragraphs **(1)** through **(5)**, results in accidental direct physical loss by fire, explosion or sprinkler leakage, we will pay for the loss caused by that fire, explosion or sprinkler leakage.

5. The following provisions, if part of your policy, do not apply to loss covered under this endorsement:

    a. Inflation Coverage and Business Personal Property Limit Seasonal Increase under **SECTION I — LIMITS OF INSURANCE**;

    b. **SECTION I — EXTENSIONS OF COVERAGE** other than:

        (1) Debris Removal;

        (2) Preservation Of Property; and

        (3) Pollution Clean Up And Removal;

    c. **LOSS OF INCOME AND EXTRA EXPENSE**; and

    d. Any endorsement provisions that add coverage for any type of direct, indirect or consequential losses.

All other policy provisions apply.

CMP-4906

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(CONTINUED)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CMP-4903.1 UTILITY INTERRUPTION — LOSS OF INCOME

This endorsement modifies insurance provided under the following:

LOSS OF INCOME AND EXTRA EXPENSE

The following coverage is added to the **EXTENSIONS OF COVERAGE**:

**Utility Interruption**

**a.** We will pay for the "Loss Of Income" and any necessary "Extra Expense" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration" at the described premises caused by an interruption in "utility service" to that premises. The interruption in "utility service" must result from an accidental direct physical loss by a "specified cause of loss" to the property described in Paragraph **b.(2)**.

The most we will pay in any one occurrence under this endorsement, regardless of the number of described premises, is the Limit Of Insurance for Utility Interruption – Loss Of Income shown in the Declarations.

**b.** With respect to this endorsement the following definitions are added:

**(1)** "Period of Restoration" means:

　**(a)** The period of time that begins when the "utility service" to the described premises has been interrupted for eight continuous hours; and

　**(b)** Ends when the interrupted "utility service" has been restored to the described premises for two continuous hours.

**(2)** "Utility Service" means:

**(a)** Water supply services, meaning the following types of property supplying water to the described premises:

　**i.** Pumping stations; and

　**ii.** Water mains.

**(b)** Communication supply services, meaning property supplying communication services, including telephone, radio, microwave or television services, to the described premises, such as:

　**i.** Communication transmission lines, including optic fiber transmission lines;

　**ii.** Coaxial cables; and

　**iii.** Microwave relays except satellites.

**(c)** Power supply services, meaning the following types of property supplying electricity, steam or gas to the described premises:

　**i.** Utility generating plants;

　**ii.** Switching stations;

　**iii.** Substations;

　**iv.** Transformers; and

　**v.** Transmission lines.

There is no coverage under this endorsement to the extent coverage is provided under the Equipment Breakdown Extension of Coverage of your policy.

All other policy provisions apply.

CMP-4903.1

State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2018
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(CONTINUED)

FE-6998.1
Page 1 of 1

In accordance with the Terrorism Risk Insurance Act of 2002, as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2015, this disclosure is part of your policy.

ST-2
1919-2000

## FE-6998.1 POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is not excluded from your current policy. However your policy does contain other exclusions which may be applicable, such as an exclusion for nuclear hazard. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under this policy, any covered losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on

January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

There is no separate premium charged to cover insured losses caused by terrorism. Your insurance policy establishes the coverage that exists for insured losses. This notice does not expand coverage beyond that described in your policy.

THIS IS YOUR NOTIFICATION THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER YOUR POLICY MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE YOUR COVERAGE.

FE-6998.1

Issued by State Farm Fire and Casualty Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

(CONTINUED)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CMP-4964 BRANDS AND LABELS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added under **SECTION I — EXTENSIONS OF COVERAGE**:

### Brands And Labels

**a.** If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause Of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

(1) Stamp the word salvage on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

(2) Remove the brands or labels, if doing so will not physically damage the merchandise.

You must relabel the merchandise or its containers to comply with the law.

**b.** We will pay reasonable costs you incur to perform the activity described in **a.(1)** or **a.(2)** above. But the most we will pay for these costs in any one occurrence under this Extension Of Coverage is the Limit Of Insurance for Brands And Labels shown in the Declarations.

The amount we pay under this Extension Of Coverage is an additional amount of insurance.

All other policy provisions apply.

CMP-4964

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# EXHIBIT 2



State Farm Fire and Casualty Company

June 4, 2020

TUREK ENTERPRISES INC
DBA ALCONA CHIROPRACTIC
445 S US 23
HARRISVILLE MI 48740-9405

State Farm Insurance Companies
Fire Claims
PO BOX 106169
Atlanta, GA  30348-6169
Fax 844 236 3646

RE:   Claim Number:   22-07N4-39K
      Date of Loss:     March 24, 2020
      Policy Number:   92-KB-3489-4

Dear Dr. Turek:

This is a follow up to our conversation on 06-04-20. You are making a claim for Loss of Income due to COVID-19.  You advised that you business has been affected by the government mandate related to COVID-19 as you have been only able to do emergency services because of this mandate. Our investigation indicates that the insured property has not sustained accidental direct physical loss. There are exclusions for virus, enforcement of ordinance or law, and consequential losses. Your policy, Form CMP 4100, and endorsement CMP 4905.1 state in part:

## CMP-4100 BUSINESSOWNERS COVERAGE FORM

## SECTION I — COVERED CAUSES OF LOSS

We insure for accidental direct physical loss to Covered Property unless the loss is:

1. Excluded in **SECTION I — EXCLUSIONS**; or

2. Limited in the **Property Subject To Limitations** provision.

## SECTION I — EXCLUSIONS

1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves

TUREK ENTERPRISES INC
DBA ALCONA CHIROPRACTIC
22-07N4-39K
Page 2
June 4, 2020

isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

**a. Ordinance Or Law**

**(1)** The enforcement of any ordinance or law:

**(a)** Regulating the construction, use or repair of any property; or

**(b)** Requiring the tearing down of any property, including the cost of removing its debris.

**(2)** This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following an accidental direct physical loss to that property.

**j. Fungi, Virus Or Bacteria**

**(1)** Growth, proliferation, spread or presence of "fungi" or wet or dry rot; or

**(2)** Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease; and

**(3)** We will also not pay for:

**(a)** Any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair or replacement of that property, by "fungi", wet or dry rot, virus, bacteria or other microorganism;

**(b)** Any remediation of "fungi", wet or dry rot, virus, bacteria or other microorganism, including the cost or expense to:

**i.** Remove the "fungi", wet or dry rot, virus, bacteria or other microorganism from Covered Property or to repair, restore or replace that property;

**ii.** Tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot, virus, bacteria or other microorganism; or

**iii.** Contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the "fungi", wet or dry rot, virus, bacteria or other microorganism; or

**(c)** The cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of "fungi", wet or dry rot, virus, bacteria or other microorganism, whether performed prior to, during or after removal, repair, restoration or replacement of Covered Property.

This exclusion does not apply if "fungi", wet or dry rot, virus, bacteria or other microorganism results from an accidental direct physical loss caused by fire or lightning.

**2.** We do not insure under any coverage for loss whether consisting of, or directly and immediately caused by, one or more of the following:

TUREK ENTERPRISES INC
DBA ALCONA CHIROPRACTIC
22-07N4-39K
Page 3
June 4, 2020

    **b. Consequential Losses**

        Delay, loss of use or loss of market.

**3.** We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in Paragraphs **1.** and **2.** immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

    **b. Acts Or Decisions**

        Conduct, acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault.

Additionally, please also see the following language from your Loss of Income and Extra Expense endorsement CMP-4905.1. This requires that there be direct physical loss to the property at the described premises (445 S US 23, Harrisville, MI). Unfortunately, there is no physical damage.

**CMP-4905.1 LOSS OF INCOME AND EXTRA EXPENSE**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The coverage provided by this endorsement is subject to the provisions of **SECTION I — PROPERTY**, except as provided below.

**COVERAGES**

**1. Loss Of Income**

    **a.** We will pay for the actual "Loss Of Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause Of Loss. With respect to loss to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

    With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, then the described premises means:

    **(1)** The portion of the building which you rent, lease or occupy; and

    **(2)** Any area within the building or on the site at which the described premises are located, if that area is the only such area that:

        **(a)** Services; or

        **(b)** Is used to gain access to;

TUREK ENTERPRISES INC
DBA ALCONA CHIROPRACTIC
22-07N4-39K
Page 4
June 4, 2020

the described premises.

**b.** We will only pay for "Loss Of Income" that you sustain during the "period of restoration" that occurs after the date of accidental direct physical loss and within the number of consecutive months for Loss Of Income And Extra Expense shown in the Declarations. We will only pay for "ordinary payroll expenses" for 90 days following the date of accidental direct physical loss.

**2. Extra Expense**

**a.** We will pay necessary "Extra Expense" you incur during the "period of restoration" that you would not have incurred if there had been no accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause Of Loss. With respect to loss to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, then the described premises means:

**(1)** The portion of the building which you rent, lease or occupy; and

**(2)** Any area within the building or on the site at which the described premises are located, if that area is the only such area that:

**(a)** Services; or

**(b)** Is used to gain access to;

the described premises.

**b.** We will only pay for "Extra Expense" that occurs after the date of accidental direct physical loss and within the number of consecutive months for Loss Of Income And Extra Expense shown in the Declarations.

The following language, from the same endorsement, discusses action of civil authority preventing access. It also still requires that there be physical damage, within one mile of the described property. It also requires that the damage be the result of a Covered Cause of Loss, which as outlined above, virus is not.

**4. Civil Authority**

**a.** When a Covered Cause Of Loss causes damage to property other than property at the described premises, we will pay for the actual "Loss Of Income" you sustain and necessary "Extra Expense" caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused

TUREK ENTERPRISES INC
DBA ALCONA CHIROPRACTIC
22-07N4-39K
Page 5
June 4, 2020

the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

**b.** Civil Authority coverage for "Loss Of Income" will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

**c.** Civil Authority coverage for necessary "Extra Expense" will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority coverage for "Loss Of Income" ends;

whichever is later.

---

**SECTION I — CONDITIONS**

**1. Property Loss Conditions**

    **d. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**(1)** There has been full compliance with all of the terms of this insurance; and

**(2)** The action is brought within 2 years after the date on which the accidental direct physical loss occurred.

Your policy does not provide coverage for this type of  loss, and we trust our explanation is complete. We will, of course, be available to discuss the position we have taken. By specifying the above grounds for denial, State Farm Fire and Casualty Company does not intend to waive, but rather specifically reserves all of its rights, including other defenses which may be applicable to this claim.

Sincerely,

Matthew Strotman
Claim Specialist
State Farm Fire & Casulty Company
844-458-4300 EXT 4023273955

**

Enclosure(s):  **

TUREK ENTERPRISES INC
DBA ALCONA CHIROPRACTIC
22-07N4-39K
Page 6
June 4, 2020

# EXHIBIT 3



**FORMS - FILED**                                                                    JULY 6, 2006
**FROM**:  LARRY PODOSHEN, SENIOR ANALYST

COMMERCIAL PROPERTY          LI-CF-2006-175

# NEW ENDORSEMENTS FILED TO ADDRESS EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

**This circular announces the submission of forms filings to address exclusion of loss due to disease-causing agents such as viruses and bacteria.**

## BACKGROUND

Commercial Property policies currently contain a pollution exclusion that encompasses contamination (in fact, uses the term *contaminant* in addition to other terminology).  Although the pollution exclusion addresses contamination broadly, viral and bacterial contamination are specific types that appear to warrant particular attention at this point in time.

## ISO ACTION

We have submitted forms filing CF-2006-OVBEF in all ISO jurisdictions and recommended the filing to the independent bureaus in other jurisdictions.  This filing introduces new endorsement CP 01 40 07 06 - Exclusion Of Loss Due To Virus Or Bacteria, which states that there is **no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease**.

**Note:**  In Alaska, District of Columbia, Louisiana*, New York and Puerto Rico, we have submitted a different version of this filing, containing new endorsement CP 01 75 07 06 in place of CP 01 40. The difference relates to lack of implementation of the mold exclusion that was implemented in other jurisdictions under a previous multistate filing.

Both versions of CF-2006-OVBEF are attached to this circular.

* In Louisiana, the filing was submitted as a recommendation to the Property Insurance Association of Louisiana (PIAL), the independent bureau with jurisdiction for submission of property filings.

## PROPOSED EFFECTIVE DATE

Filing CF-2006-OVBEF was submitted with a proposed effective date of January 1, 2007, in accordance with the applicable effective date rule of application in each state, with the exception of various states for which the insurer establishes its own effective date.

Upon approval, we will announce the actual effective date and state-specific rule of effective date application for each state.

## RATING SOFTWARE IMPACT

New attributes being introduced with this revision:

- A new form is being introduced.

## CAUTION

This filing has <u>not</u> yet been approved. If you print your own forms, do <u>not</u> go beyond the proof stage until we announce approval in a subsequent circular.

## RELATED RULES REVISION

We are announcing in a separate circular the filing of a corresponding rules revision. Please refer to the **Reference(s)** block for identification of that circular.

## REFERENCE(S)

LI-CF-2006-176 (7/6/06) - New Additional Rule Filed To Address Exclusion Of Loss Due To Virus Or Bacteria

## ATTACHMENT(S)

- Multistate Forms Filing CF-2006-OVBEF

- State-specific version of Forms Filing CF-2006-OVBEF (Alaska, District of Columbia, Louisiana, New York, Puerto Rico)

We are sending these attachments only to recipients who asked to be put on the mailing list for attachments. If you need the attachments for this circular, contact your company's circular coordinator.

## PERSON(S) TO CONTACT

If you have any questions concerning:

- the content of this circular, please contact:

Larry Podoshen
Senior Analyst
Commercial Property
(201) 469-2597          Fax: (201) 748-1637
comfal@iso.com
lpodoshen@iso.com

or

Loretta Newman, CPCU
Manager
Commercial Property
(201) 469-2582          Fax: (201) 748-1873
comfal@iso.com
lnewman@iso.com

© ISO Properties, Inc., 2006

- the **mailing or distribution** of this circular, please contact our Customer Service Division:

  E-mail:                info@iso.com
  Fax:                   201-748-1472
  Phone:                 800-888-4476
  World Wide Web:        http://www.iso.com
  Write:                 See address on page 1

- products or services, please call or e-mail ISO Customer Service, or call your ISO representative.

Callers outside the United States may contact us using our global toll-free number (International Access Code + 800 48977489) or by e-mail at info.global@iso.com.  For information on all ISO products, visit us at http://www.iso.com.

© ISO Properties, Inc., 2006



### IMPORTANT NOTICE FOR USERS OF
### <u>ISO PRODUCTS AND SERVICES</u>

<u>Please make sure that your company has authorized your use of this product and has complied with the requirements applicable in the jurisdiction where you plan to use it.</u>

We distribute both state-specific and multi-state products and services.  We do not distribute all the multi-state products and services for use in every jurisdiction due to corporate policy, regulatory preference, or variations or lack of clarity in state laws.

We provide participating insurers with information concerning the jurisdictions for which our products and services are distributed.  Even in those jurisdictions, each insurer must determine what filing requirements, if any, apply and whether those requirements have been satisfied.

Now, as in the past, all of our products and services are advisory, and are made available for optional use by participating insurers as a matter of individual choice.  Your company must decide for itself which, if any, ISO products or services are needed or useful to its operation and how those selected for use should be applied.  We urge that you be guided by the advice of your attorneys on the legal requirements.

**Copyright Explanation**

The material distributed by Insurance Services Office, Inc. is copyrighted.  All rights reserved.  Possession of these pages does not confer the right to print, reprint, publish, copy, sell, file, or use same in any manner without the written permission of the copyright owner.  Permission is hereby granted to members, subscribers, and service purchasers to reprint, copy, or otherwise use the enclosed material for purposes of their own business use relating to that territory or line or kind of insurance, or subdivision thereof, for which they participate, provided that:

A.  where ISO copyrighted material is reprinted, copied, or otherwise used **as a whole**, it must reflect the copyright notice actually shown on such material.

B.  where ISO copyrighted material is reprinted, copied, or otherwise used **in part**, the following credit legend must appear at the bottom of each page so used:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

© ISO Properties, Inc., 2006

**Edition 11-03**

COMMERCIAL FIRE AND ALLIED LINES
FORMS FILING CF-2006-OVBEF

# Amendatory Endorsement - Exclusion Of Loss Due To Virus Or Bacteria

## About This Filing

This filing addresses exclusion of loss due to disease-causing agents such as viruses and bacteria.

### New Form

We are introducing:

♦   Endorsement **CP 01 40 07 06** - Exclusion Of Loss Due To Virus Or Bacteria

## Related Filing(s)

Rules Filing CF-2006- OVBER

## Introduction

The current pollution exclusion in property policies encompasses contamination (in fact, uses the term *contaminant* in addition to other terminology).  Although the pollution exclusion addresses contamination broadly, viral and bacterial contamination are specific types that appear to warrant particular attention at this point in time.

An example of bacterial contamination of a product is the growth of listeria bacteria in milk.  In this example, bacteria develop and multiply due in part to inherent qualities in the property itself.  Some other examples of viral and bacterial contaminants are rotavirus, SARS, influenza (such as avian flu), legionella and anthrax.  The universe of disease-causing organisms is always in evolution.

Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property.  When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses.

© ISO Properties, Inc., 2006

# Current Concerns

Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage.  An allegation of property damage may be a point of disagreement in a particular case.  In addition, pollution exclusions are at times narrowly applied by certain courts.  In recent years, ISO has filed exclusions to address specific exposures relating to contaminating or harmful substances.  Examples are the mold exclusion in property and liability policies and the liability exclusion addressing silica dust.  Such exclusions enable elaboration of the specific exposure and thereby can reduce the likelihood of claim disputes and litigation.

While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage and to create sources of recovery for such losses, contrary to policy intent.

In light of these concerns, we are presenting an exclusion relating to contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.

# Features Of New Amendatory Endorsement

The amendatory endorsement presented in this filing states that there is **no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease**.  The exclusion (which is set forth in Paragraph B of the endorsement) applies to property damage, time element and all other coverages; introductory Paragraph A  prominently makes that point.  Paragraphs C and D serve to avoid overlap with other exclusions, and Paragraph E emphasizes that other policy exclusions may still apply.

# Copyright Explanation

The material distributed by Insurance Services Office, Inc. is copyrighted.  All rights reserved.  Possession of these pages does not confer the right to print, reprint, publish, copy, sell, file or use same in any manner without the written permission of the copyright owner.

© ISO Properties, Inc., 2006

COMMERCIAL FIRE AND ALLIED LINES
FORMS FILING CF-2006- OVBEF                                    Page 3

# Important Note

Insurance Services Office, Inc. (ISO) makes available advisory services to property/casualty insurers. ISO has no adherence requirements. ISO policy forms and explanatory materials are intended solely for the information and use of ISO's participating insurers and their representatives, and insurance regulators. Neither ISO's general explanations of policy intent nor opinions expressed by ISO's staff necessarily reflect every insurer's view or control any insurer's determination of coverage for a specific claim. ISO does not intercede in coverage disputes arising from insurance policies. If there is any conflict between a form and any other part of the attached material, the provisions of the form apply.

© ISO Properties, Inc., 2006

COMMERCIAL PROPERTY
CP 01 40 07 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage - Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

N

E

W

 © ISO Properties, Inc.,  2006  □

**ALASKA, DISTRICT OF COLUMBIA, LOUISIANA, NEW YORK, PUERTO RICO**
COMMERCIAL FIRE AND ALLIED LINES
FORMS FILING CF-2006-OVBEF

# Amendatory Endorsement - Exclusion Of Loss Due To Virus Or Bacteria

## About This Filing

This filing addresses exclusion of loss due to disease-causing agents such as viruses and bacteria.

### New Form

We are introducing:

♦ Endorsement **CP 01 75 07 06** - Exclusion Of Loss Due To Virus Or Bacteria

## Related Filing(s)

Rules Filing CF-2006-OVBER

## Introduction

The current pollution exclusion in property policies encompasses contamination (in fact, uses the term *contaminant* in addition to other terminology). Although the pollution exclusion addresses contamination broadly, viral and bacterial contamination are specific types that appear to warrant particular attention at this point in time.

An example of bacterial contamination of a product is the growth of listeria bacteria in milk. In this example, bacteria develop and multiply due in part to inherent qualities in the property itself. Some other examples of viral and bacterial contaminants are rotavirus, SARS, influenza (such as avian flu), legionella and anthrax. The universe of disease-causing organisms is always in evolution.

Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement

© ISO Properties, Inc., 2006

COMMERCIAL FIRE AND ALLIED LINES
FORMS FILING CF-2006-OVBEF                                                    Page 2

of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses.

# Current Concerns

Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case. In addition, pollution exclusions are at times narrowly applied by certain courts. In recent years, ISO has filed exclusions to address specific exposures relating to contaminating or harmful substances. Examples are the mold exclusion in property and liability policies and the liability exclusion addressing silica dust. Such exclusions enable elaboration of the specific exposure and thereby can reduce the likelihood of claim disputes and litigation.

While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage and to create sources of recovery for such losses, contrary to policy intent.

In light of these concerns, we are presenting an exclusion relating to contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.

# Features Of New Amendatory Endorsement

The amendatory endorsement presented in this filing states that there is **no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease**. The exclusion (which is set forth in Paragraph B of the endorsement) applies to property damage, time element and all other coverages; introductory Paragraph A  prominently makes that point. Paragraph C serves to avoid overlap with another exclusion, and Paragraph D emphasizes that other policy exclusions may still apply.

# Copyright Explanation

The material distributed by Insurance Services Office, Inc. is copyrighted. All rights reserved. Possession of these pages does not confer the right to print, reprint, publish, copy, sell, file or use same in any manner without the written permission of the copyright owner.

© ISO Properties, Inc., 2006

# Important Note

Insurance Services Office, Inc. (ISO) makes available advisory services to property/casualty insurers. ISO has no adherence requirements. ISO policy forms and explanatory materials are intended solely for the information and use of ISO's participating insurers and their representatives, and insurance regulators. Neither ISO's general explanations of policy intent nor opinions expressed by ISO's staff necessarily reflect every insurer's view or control any insurer's determination of coverage for a specific claim. ISO does not intercede in coverage disputes arising from insurance policies. If there is any conflict between a form and any other part of the attached material, the provisions of the form apply.

© ISO Properties, Inc., 2006

COMMERCIAL PROPERTY
CP 01 75 07 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from fungus. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**D.** The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

N

E

W

CP 01 75 07 06 © ISO Properties, Inc.,  2006 Page 1 of 1 ▯