## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **TUREK ENTERPRISES, INC., d/b/a** | § | |
| **ALCONA CHIROPRACTIC,** | § | |
| **individually and on behalf of all others** | § | |
| **similarly situated** | § | **CASE NO.: 20-cv-11655** |
| | § | |
| **Plaintiff,** | § | **Hon. Thomas L. Ludington** |
| | § | |
| **v.** | § | **Mag. Judge Patricia T. Morris** |
| | § | |
| **STATE FARM MUTUAL** | § | |
| **AUTOMOBILE INSURANCE** | § | |
| **COMPANY, an Illinois corporation, and** | § | |
| **STATE FARM FIRE AND CASUALTY** | § | |
| **COMPANY, an Illinois corporation,** | § | |
| | § | |
| **Defendants.** | § | |

### DEFENDANTS STATE FARM FIRE AND CASUALTY COMPANY AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company move to dismiss the action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

1.  In support of this motion, Defendants respectfully refer the Court to the accompanying memorandum of law in support.

2. Pursuant to Local Rule 7.1(a), counsel for Defendants sought concurrence from Plaintiff's counsel via email on July 14, 2020, explaining the nature of the motion and its legal bases.  Plaintiff's counsel did not concur.

WHEREFORE, Defendants respectfully request that the Court enter an order granting this motion; dismissing the action with prejudice; and awarding such other and further relief the Court deems just and appropriate.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, PLC

By: _s/Thomas W. Cranmer_____
    Thomas W. Cranmer (P25252)
    Matthew P. Allen (P57914)
    Paul D. Hudson (P69844)
    Miller Canfield Paddock & Stone, PLC
    840 West Long Lake Road, Suite 200
    Troy, Michigan 48098
    Telephone: (248) 879-2000
    cranmer@millercanfield.com

    DECHERT LLP
    Douglas W. Dunham
    Bert L. Wolff
    Three Bryant Park
    1095 Avenue of the Americas
    New York, NY  10036
    (212) 698-3500 (Telephone)
    (212) 698-3599 (Fax)
    douglas.dunham@dechert.com
    bert.wolff@dechert.com

    *Counsel for Defendants*

July 15, 2020

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **TUREK ENTERPRISES, INC., d/b/a** | § | |
| **ALCONA CHIROPRACTIC,** | § | |
| **individually and on behalf of all others** | § | |
| **similarly situated,** | § | **CASE NO.:** |
| | § | **1:20-cv-11655-TLL-PTM** |
| **Plaintiff,** | § | |
| | § | **Hon. Thomas L. Ludington** |
| **v.** | § | |
| | § | **Mag. Judge Patricia T. Morris** |
| **STATE FARM MUTUAL** | § | |
| **AUTOMOBILE INSURANCE** | § | |
| **COMPANY, an Illinois corporation,** | § | |
| **and STATE FARM FIRE AND** | § | |
| **CASUALTY COMPANY, an Illinois** | § | |
| **corporation,** | § | |
| | § | |
| **Defendants.** | | |

**DEFENDANTS STATE FARM FIRE AND CASUALTY COMPANY AND
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

**Of Counsel:**
**DECHERT LLP**
**Douglas W. Dunham**
**Bert L. Wolff**
**Three Bryant Park**
**1095 Avenue of the Americas**
**New York, New York  10036**
**(212) 698-3500 (Telephone)**
**douglas.dunham@dechert.com**
**bert.wolff@dechert.com**

**MILLER CANFIELD PADDOCK
 & STONE, PLC**
**Thomas W. Cranmer (P25252)**
**Matthew P. Allen (P57914)**
**Paul D. Hudson (P69844)**
**840 West Long Lake Road, Suite 200**
**Troy, Michigan  48098**
**(248) 879-2000 (Telephone)**
**cranmer@millercanfield.com**

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES .................................................................. ii

CONCISE STATEMENT OF ISSUES PRESENTED ........................... vi

CONTROLLING AUTHORITIES ...................................................... vii

I.      INTRODUCTION ..................................................................... 1

II.     LEGAL STANDARD ................................................................ 4

III.    PLAINTIFF FAILS TO STATE A CLAIM ................................. 5

        A.      Plaintiff's Breach Of Contract Claim Should Be Dismissed ............. 5

                i.      Coverage For Plaintiff's Alleged Losses Is Barred By
                        The Virus Exclusion ............................................ 6

                ii.     Even Without The Virus Exclusion, Plaintiff Does Not
                        Allege Covered Losses ........................................ 12

                iii.    The Policy's Civil Authority Provision Is Inapplicable ......... 16

                iv.     The Policy's "Loss of Income," "Extended Loss of
                        Income," and "Extra Expense" Coverage Is Inapplicable ....... 20

                v.      Additional Policy Exclusions Bar Plaintiff's Claims .............. 22

                vi.     Plaintiff Cannot Bring A Breach of Contract Claim
                        Against State Farm Mutual Automobile Insurance
                        Company ........................................................... 24

        B.      Plaintiff's Declaratory Judgment Claim Should Be Dismissed ........ 25

IV.     CONCLUSION ......................................................................... 25

i

# <u>INDEX OF AUTHORITIES</u>

CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................5, 12

*Auto-Owners Insurance Co. v. Harrington*,
    565 N.W.2d 839 (Mich. 1997)....................................................5

*Bahama Bay II Condo. Ass'n, Inc. v. United National Insurance Co.*,
    374 F. Supp. 3d 1274 (M.D. Fla. 2019)...............................22

*Bartram, LLC v. Landmark Am. Ins. Co.*,
    864 F. Supp. 2d 1229 (N.D. Fla. 2012)...............................24

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................4

*City of Grosse Pointe Park v. Michigan Mun. Liab. & Prop. Pool*,
    702 N.W.2d 106 (Mich. 2005)..............................................10

*Consolidated Jewelers v. Standard Fin. Corp.*,
    325 F.2d 31 (6th Cir. 1963) .................................................11

*Cytopath Biopsy Laboratory, Inc. v. U.S. Fidelity & Guaranty Co.*,
    774 N.Y.S.2d 710 (App. Div. 2004)....................................23

*Dickie Brennan & Co. v. Lexington Insurance Co.*,
    636 F.3d 683 (5th Cir. 2011) ...............................18, 19, 20

*Dow Chemical Co. v. Reinhard*,
    2007 WL 2780545 (E.D. Mich. Sept. 20, 2007) ...............25

*Dunn v. Detroit Automobile Inter-Insurance Exchange*,
    657 N.W.2d 153 (Mich. Ct. App. 2002)......................2, 3, 11

*Eastern Enters. v. Apfel*,
    524 U.S. 498 (1998).................................................................12

*Gavrilides Management Co. LLC v. Michigan Inurance Co.*,
    Case No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham Cty., July 1,
    2020) .........................................................................3, 7, 13

*Greenberg v. Life Insurance Co.*,
   177 F.3d 507 (6th Cir. 1999) ...................................................................5

*Hayley v. Allstate Insurance Co.*,
   686 N.W.2d 273 (Mich. Ct. App. 2004) ...................................................8

*Henderson v. State Farm Fire & Casualty Co.*,
   596 N.W.2d 190 (Mich. 1999)...............................................................2, 5

*Hunt v. Drielick*,
   852 N.W.2d 562 (Mich. 2014).................................................................2, 3

*K.V.G. Props., Inc. v. Westfield Insurance Co.*,
   900 F.3d 818 (6th Cir. 2018) ...................................................................5

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. National Fire Insurance Co.*,
   2007 WL 2489711 (M.D. La. Aug. 29, 2007)..................................................18

*Keetch v. Mutual of Enumclaw Insurance Co.*,
   831 P.2d 784 (Wash. Ct. App. 1992)................................................................15

*Kloss v. RBS Citizens, N.A.*,
   996 F. Supp. 2d 574 (E.D. Mich. 2014) ............................................................4

*MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*,
   558 F.3d 1184 (10th Cir. 2009) .......................................................................22

*Midkiff v. Adams Cty. Reg'l Water Dist.*,
   409 F.3d 758 (6th Cir. 2005) ............................................................................4

*National Children's Expositions Corp. v. Anchor Insurance Co.*,
   279 F.2d 428 (2d Cir. 1960) ............................................................................14

*National Sand, Inc. v. Nagel Constr. Co.*,
   451 N.W.2d 618 (Mich. Ct. App. 1990)............................................................24

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co.*,
   17 F. Supp. 3d 323 (S.D.N.Y. 2014) ...............................................................15

*Not Home Alone, Inc. v. Philadelphia. Indemnity Insurance Co.*,
    2011 WL 13214381 (E.D. Tex. Mar. 30), *adopted*, 2011 WL
    13217067 (E.D. Tex. Apr. 8, 2011) ................................................................. 19

*Ortiz v. Allstate Insurance Co.*,
    2006 WL 889378 (Mich. Ct. App. Apr. 6, 2006) ............................................ 7, 8

*Pension Benefit Guarantee Corp. v. R.A. Gray & Co.*,
    467 U.S. 717 (1984) ........................................................................................ 12

*Petroterminal de Panama, S.A. v. Houston Casualty Co.*,
    114 F. Supp. 3d 152 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 46 (2d
    Cir. 2016) ......................................................................................................... 24

*Petroterminal de Panama, S.A. v. Houston Cas. Co.*,
    659 F. App'x 46 (2d Cir. 2016) ....................................................................... 24

*S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*,
    2008 WL 450012 (S.D. Tex. Feb. 15, 2008) .............................................. 18, 19

*Schmidt v. PennyMac Loan Servs. LLC*,
    106 F. Supp. 3d 859 (E.D. Mich. 2015) ............................................................ 5

*Social Life Magazine, Inc. v. Sentinel Insurance Co.*,
    No. 1:20-cv-3311 (S.D.N.Y. May 14, 2020) ................................................... 14

*Source Food Technology, Inc. v. U.S. Fidelity & Guaranty Co.*,
    465 F.3d 834 (8th Cir. 2006) ........................................................................... 15

*Sutters v. U.S. Bank, N.A.*,
    2015 WL 4104846 (E.D. Mich. July 8, 2015) ................................................. 11

*Syufy Enters. v. Home Insurance Co.*,
    1995 WL 129229 (N.D. Cal. Mar. 21, 1995) .............................................. 18, 19

*Torres Hillsdale Country Cheese, L.L.C. v. Auto-Owners Insurance
Co.*, 2013 WL 5450284 (Mich. Ct. App. Oct. 1, 2013) ...................................... 23

*Tuepker v. State Farm Fire & Casualty Co.*,
    507 F.3d 346 (5th Cir. 2007) ............................................................................. 9

*United Air Lines, Inc. v. Insurance Co. of State of Pa.*,
    439 F.3d 128 (2d Cir. 2006) ........................................................................ 18, 19

*Universal Image Productions, Inc. v. Chubb Corp.*,
    703 F. Supp. 2d 705 (E.D. Mich. 2010), *aff'd sub nom.*, *Universal
    Image Productions, Inc. v. Federal Insurance Co.*, 475 F. App'x
    569 (6th Cir. 2012)................................................................................13

*Universal Image Productions, Inc. v. Federal Insurance Co.*,
    475 F. App'x 569 (6th Cir. 2012)....................................................2, 13

## OTHER AUTHORITIES

U.S. CONST., amends. 5, 14 .................................................................11

MICH. CONST., art. I § 17 .................................................................11

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    Whether the exclusion in Plaintiff's Businessowners Insurance Policy (the "Policy") for any loss that would not have occurred in the absence of a virus bars Plaintiff's claims for business interruption losses allegedly caused by a government closure order issued in response to the COVID-19 virus?

2.    Whether the Policy's requirement of "accidental direct physical loss" to Covered Property bars Plaintiff's claims where Plaintiff has not alleged any actual accidental direct physical loss to its property?

3.    Whether Plaintiff has failed to plead the elements required for coverage under the Civil Authority provision in the Endorsement to the Policy?

4.    Whether Plaintiff has failed to plead the elements required for coverage under the Loss of Income, Extended Loss of Income, and Extra Expense provisions in the Endorsement to the Policy?

5.    Whether the Ordinance or Law, Acts or Decisions, and Consequential Loss Exclusions in the Policy bar Plaintiff's claims?

6.    Whether Plaintiff is barred from bringing a breach of contract claim against State Farm Mutual Automobile Insurance Company, which is not a party to the contract?

7.    Whether Plaintiff's claim for declaratory judgment is duplicative of its breach of contract claim and should therefore be dismissed?

**STATE FARM'S ANSWER TO ALL:  YES**

# CONTROLLING AUTHORITIES

Virus Exclusion

*Dunn v. Detroit Automobile Inter-Insurance Exchange*, 657 N.W.2d 153 (Mich. Ct. App. 2002).

*Ortiz v. Allstate Insurance Co.*, 2006 WL 889378 (Mich. Ct. App. Apr. 6, 2006).

*Gavrilides Management Co. LLC v. Michigan Ins. Co*., Case No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham Cty., July 1, 2020).

Accidental Direct Physical Loss to Covered Property

*Universal Image Productions, Inc. v. Chubb Corp*., 703 F. Supp. 2d 705 (E.D. Mich. 2010), *aff'd sub nom.*, *Universal Image Productions, Inc. v. Federal Insurance Co.*, 475 F. App'x 569 (6th Cir. 2012).

*Universal Image Productions, Inc. v. Federal Insurance Co.*, 475 F. App'x 569 (6th Cir. 2012).

*Gavrilides Management Co. LLC v. Michigan Ins. Co*., Case No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham Cty., July 1, 2020).

Civil Authority Provision

*Dickie Brennan & Co. v. Lexington Insurance Co.*, 636 F.3d 683, 685 (5th Cir. 2011).

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co.*, 2007 WL 2489711, at *3 (M.D. La. Aug. 29, 2007).

*Not Home Alone, Inc. v. Phila. Indem. Ins. Co.*, 2011 WL 13214381 at *6 (E.D. Tex. Mar. 30, 2011), *adopted*, 2011 WL 13217067 (E.D. Tex. Apr. 8, 2011).

*S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, 2008 WL 450012, at *9 (S.D. Tex. Feb. 15, 2008).

*Syufy Enters. v. Home Ins. Co.*, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995).

*United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 131 (2d Cir. 2006).

Ordinance or Law Exclusion

*Bahama Bay II Condo. Ass'n, Inc. v. United Nat'l Ins. Co.*, 374 F. Supp. 3d 1274, 1281–82 (M.D. Fla. 2019).

*MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1192 (10th Cir. 2009).

Acts or Decisions Exclusion

*Cytopath Biopsy Laboratory, Inc. v. U.S. Fidelity & Guaranty Co.*, 774 N.Y.S.2d 710 (App. Div. 2004).

*Torres Hillsdale Country Cheese, L.L.C. v. Auto-Owners Ins. Co.*, 2013 WL 5450284 (Mich. Ct. App. Oct. 1, 2013).

Consequential Loss

*Bartram, LLC v. Landmark Am. Ins. Co.*, 864 F. Supp. 2d 1229, 1240 (N.D. Fla. 2012).

*Petroterminal de Panama, S.A. v. Houston Cas. Co.*, 114 F. Supp. 3d 152, 160 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 46 (2d Cir. 2016).

No Claim Against Non-Party To Contract

*National Sand, Inc. v. Nagel Constr. Co.*, 451 N.W.2d 618, 620 (Mich. Ct. App. 1990).

Declaratory Judgment Is Redundant

*Dow Chemical Co. v. Reinhard*, 2007 WL 2780545, at *7 (E.D. Mich. Sept. 20, 2007) (Ludington, J.).

## I.     **INTRODUCTION**

Plaintiff has sued State Farm for coverage of business interruption losses that allegedly occurred as a result of the Governor's March 24, 2020, closure order, which was issued to "suppress the spread of COVID-19."  (Ex. A at 1.)  Plaintiff's claims for breach of contract seek coverage under the "Loss of Income and Extra Expense" Endorsement (the "Endorsement") to its Businessowners Insurance Policy (the "Policy").[1]  Plaintiff also asserts claims for declaratory relief.

Plaintiff's claims are barred by the clear language of the Policy and its Endorsement.  In order to trigger coverage, the Policy requires "accidental direct physical loss to" Covered Property.  (Policy at 3.)  As discussed below (*see* Point III.A.ii *infra*), the presence or suspected presence of a virus does not constitute the requisite "accidental direct physical loss to" Covered Property to trigger coverage. The Sixth Circuit has held that, under Michigan law, direct physical loss requires "tangible damage to [the] insured property," explaining that "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental

---

[1] All Exhibits are attached to the Declaration of Matthew P. Allen.  True and correct copies of Plaintiff's Policy Documents are compiled as Exhibit B.  Plaintiff's Policy Booklet (the "Policy") is found at bates-numbers SF000012 to 51; the Endorsement at SF000072 to 76; and the Declarations at SF000052 to 57.  The full Policy is submitted herewith because Plaintiff did not attach all portions of it to the Complaint.

economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 574 (6th Cir. 2012). Coverage is precluded where, as here, Plaintiff has suffered alleged economic losses rather than a physical injury to covered property. *See id*.

Moreover, the Policy contains a Virus Exclusion barring coverage for "any loss which would not have occurred in the absence of ... Virus." (Policy at 5-6.) Plaintiff's factual allegations establish that this exclusion bars its claims. (*See* Point III.A.i *infra*.) Long-standing Michigan law establishes that courts must "look to the language of the insurance policy," and enforce the policy "in accordance with its terms." *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999). "Perhaps the most fundamental rule of Michigan insurance jurisprudence is that an insurer can never be held liable for a risk it did not assume and for which it did not charge or receive any premium." *Dunn v. Detroit Auto Inter-Ins. Exch.*, 657 N.W.2d 153, 160 (Mich. Ct. App. 2002). For this reason, "clear and specific exclusions must be enforced." *Hunt v. Drielick*, 852 N.W.2d 562, 566 (Mich. 2014). Here, the Policy's plain language clearly excludes coverage for losses that occur as a result of a virus. (*See* Point III.A.i *infra*.)

Insurance companies exclude certain causes of loss where the risk is difficult or impossible to estimate and may be catastrophic—as it is for viruses, as was demonstrated by the Severe Acute Respiratory Syndrome (SARS) outbreak in 2002-

03 and is now shown again by the COVID-19 pandemic.[2]  To impose liability retroactively for an excluded peril, as Plaintiff asks the Court to do, would arbitrarily impose an inequitable burden on State Farm and other insurers to cover a risk that their policies explicitly and unambiguously informed policyholders was not covered and for which the insurers did not charge a premium.  Such a result would flatly contravene settled Michigan insurance law as set forth in *Dunn* and *Hunt* and would violate State Farm's due process rights and other constitutional guarantees.

Just recently, a Michigan Business Court Judge sitting in the Ingham County Circuit Court rejected as a matter of law substantially similar claims brought by an insured restaurant seeking to recover for losses allegedly incurred as a result of government stay-at-home orders issued in response to the COVID-19 virus.  The court found that the insured's claims were barred under the Virus Exclusion in the insured's policy and by the insured's failure to establish the requisite "accidental direct physical loss" to covered property.[3]  This Court should rule likewise here.

In addition, Plaintiff's allegations do not establish coverage under the Endorsement's Civil Authority, Extra Expense, and Loss of Income provisions.  Those provisions afford coverage for lost income under specific factual

---

[2] Insurance policies exclude coverage for such potentially catastrophic hazards as "volcanic eruption," "nuclear hazard," "war," and "flood."  (*See* Policy at 5.)

[3] *Gavrilides Mgmt. Co. LLC v. Michigan Ins. Co*., Case No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham Cty., July 1, 2020), Tr. at 18-23 (court's ruling) (attached as Ex. C).

circumstances that are not present under Plaintiff's allegations. (*See* Point III.A.iii

& iv *infra*.) Coverage is also barred as a matter of law by the Policy's "Ordinance

or Law," "Acts or Decisions," and "Consequential Loss" Exclusions. (*See* Point

III.A.iv *infra*.) Because there is no coverage under the Policy, Plaintiff's breach of

contract claim should be dismissed. Plaintiff's declaratory judgment claims likewise

fail because there is no coverage for Plaintiff's purported losses and for other

reasons. (*See* Point III.B *infra*.)

As discussed further below, Plaintiff's Complaint should be dismissed for

failure to state a claim. Where, as here, the named Plaintiff's claims fail as a matter

of law, the putative class action complaint should be dismissed in its entirety. *See*,

*e.g.*, *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 773 (6th Cir. 2005).

## II.    <u>LEGAL STANDARD</u>

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007). The "[f]actual allegations must be enough to

raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555; *see also

Kloss v. RBS Citizens, N.A*., 996 F. Supp. 2d 574, 582 (E.D. Mich. 2014) (Ludington,

J.). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court may take judicial notice of the Policy and government order, which are referenced in the Complaint and are central to Plaintiff's claims. *Schmidt v. PennyMac Loan Servs. LLC*, 106 F. Supp. 3d 859, 865 (E.D. Mich. 2015) (Ludington, J.); *see Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999).

## III.   PLAINTIFF FAILS TO STATE A CLAIM

### A.   Plaintiff's Breach Of Contract Claim Should Be Dismissed

"[T]he construction and interpretation of an insurance contract is a question of law for a court to determine." *Henderson*, 596 N.W.2d at 193. "[W]here there is no ambiguity ... the terms of a contract must be enforced as written." *Id.* "[A] court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise," and "[a] court must not hold an insurance company liable for a risk that it did not assume." *Id.*

"Michigan courts engage in a two-step analysis when determining coverage under an insurance policy:  (1) whether the general insuring agreements cover the loss and, if so, (2) whether an exclusion negates coverage." *K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 821 (6th Cir. 2018).  Policy provisions, including exclusions, are "valid as long as [they are] clear, unambiguous and not in contravention of public policy." *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 841 (Mich. 1997). Under the clear and unambiguous terms of the Policy,

Plaintiff's claimed losses do not meet the terms of coverage and are subject to exclusions, including the Virus Exclusion. Plaintiff's breach of contract claim should thus be dismissed as a matter of law.

> ### i.    Coverage For Plaintiff's Alleged Losses Is Barred By The Virus Exclusion

Plaintiff's claims are barred by the Policy's Virus Exclusion, which states:

**SECTION I – EXCLUSIONS**
1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
…
**j. Fungi, Virus or Bacteria**
…
(2) Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease; …. (Policy at 5-6 (¶ 1, j (2)).)

The heading for the exclusion conspicuously includes "Virus" in bold type. The Policy's table of contents also separately lists the "Fungi, Virus Or Bacteria" Exclusion. (Policy at 1.)

Plaintiff's Endorsement for "Loss of Income and Extra Expense," upon which Plaintiff sues, expressly incorporates Section I of the Policy, which requires a Covered Cause Of Loss in order for there to be coverage. (Endorsement at 1.) Per the Policy's terms, Covered Cause Of Loss means ***both*** an "accidental direct

physical loss to" Covered Property *and* that the loss is not excluded in the Policy's SECTION I – EXCLUSIONS.   (Policy at 4.)   The Policy contains the Virus Exclusion, among others.   Since the "Loss of Income and Extra Expense" Endorsement requires a Covered Cause Of Loss (Endorsement at 1), and since there is no Covered Cause Of Loss because (*inter alia*) the Virus Exclusion applies, there is no coverage under the Endorsement.

The Virus Exclusion is unambiguous.  As noted above, a Michigan state court recently held that a similarly-worded virus exclusion in an insurer's policy barred as a matter of law claims by an insured restaurant for alleged business interruption losses purportedly incurred as a result of government stay-at-home orders issued due to COVID-19.  *Gavrilides Mgmt. Co. LLC*, Case No. 20-258-CB-C30 (Mich. Cir. Ct., Ingham Cty., July 1, 2020), Tr. at 20-22 (Ex. C.)  The policy in that case contained a virus exclusion that barred coverage for loss "caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Id.* at 10.  The court dismissed the insured's claims as a matter of law, holding, *inter alia*, that the policy's virus exclusion was not vague and barred coverage. *Id.* at 20-22.

The state court's ruling is consistent with Michigan precedent, which has enforced comparable policy exclusions barring coverage for losses occurring as a result of certain risks and found the exclusions to be unambiguous. *See, e.g.*, *Ortiz*

*v. Allstate Ins. Co.*, 2006 WL 889378 (Mich. Ct. App. Apr. 6, 2006); *Hayley v. Allstate Ins. Co*., 686 N.W.2d 273, 275-76 (Mich. Ct. App. 2004).  For example, in *Ortiz*, the Michigan Court of Appeals enforced an exclusion in an insurance policy that barred coverage for mold.  2006 WL 889378 at *3.  In that case, a fire in the insured's attic was doused with water, resulting in extensive water and mold damage.  While the applicable policy covered fire and water damage, it specifically disclaimed losses "consisting of or caused by ... mold."  *Id.*  In analyzing the exclusion, the Michigan Court of Appeals held that "[t]his provision clearly and unambiguously excludes mold from being a covered loss."  *Id.*  In rejecting the insured's assertion of coverage, the Court of Appeals stated that policy terms "must be construed according to [their] plain and ordinary meaning and that "[c]lear and unambiguous language may not be rewritten under the guise of interpretation."  *Id.* at *3-4.

Here, in an attempt to avoid the unambiguous language of the contract, Plaintiff alleges that the Governor's March 24 shutdown Order "was the sole, direct and only proximate cause of the business losses suffered by the Plaintiffs."  (Compl. ¶ 6).  Yet the COVID-19 virus is plainly at the root of this Order, which expressly states that it was issued "[t]o suppress the spread of COVID-19."  (Ex. A at 1.)

Thus, Plaintiff's allegations and the Executive Order they reference only underscore the applicability of the Virus Exclusion.  To this end, the Virus Exclusion applies to any loss where a virus is anywhere in the chain of causation.  The lead-in

language to the Virus Exclusion (and other exclusions) excludes from coverage "any loss which would not have occurred in the absence of one or more of the [listed] excluded events" and provides that State Farm does not "insure for such loss regardless of (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces or occurs as a result of any combination of these."  (Policy at 5-6 (¶ 1, j (2)).)  This "'anti-concurrent causation clause'" bars coverage for losses if virus is "in any sequence" in the chain of causation, even if there are also other causes.  *Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 351, 354 (5th Cir. 2007).  Here, Plaintiff's alleged losses "would not have occurred in the absence of" a "virus" and are thus excluded from coverage under the Virus Exclusion.  *See id.*

Plaintiff's attempt to mischaracterize the Virus Exclusion through reliance on the 2006 ISO circular is misplaced on multiple levels.  (Compl. ¶¶ 45-46.)  To begin, the 2006 ISO circular is not incorporated by reference into the Policy.  It is extrinsic to the Policy.  It is not part of its contractual terms.  To the contrary, the Policy begins by stating, "AGREEMENT:  We agree to provide the insurance described in this policy. … Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered."  (Policy at 3.)

Where, as here, a policy is not ambiguous, "extrinsic evidence is inadmissible as an aid in the construction of th[e] policy." *City of Grosse Pointe Park v. Michigan Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 116 (Mich. 2005).

Moreover, Plaintiff misconstrues the 2006 ISO material.  For instance, Plaintiff ignores the conspicuous bolded language on page 1 of the 2006 ISO circular:  "We have submitted forms filing CF-2006-OVBEF ….  This filing introduces new endorsement CP 01 40 07 06 – Exclusion Of Loss Due To Virus Or Bacteria, which states that there is **no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease**."  (ECF No. 1 at 88) (bold in original).  Identical bolded language also appears on page 2 of the ISO's "Amendatory Endorsement - Exclusion Of Loss Due To Virus Or Bacteria."  (*Id*. at 93.)  Further, though Plaintiff plucks the phrase "relating to contamination" from a single sentence of the ISO commentary that addressed "Current Concerns" (*id*.; Compl. ¶ 46), Plaintiff ignores the fact that the word "contamination" does not appear in the terms of CP 01 40 07 06 "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA."  (ECF No. 1 at 95.)  Finally, contrary to Plaintiff's reading, the commentary in the ISO's Introduction to the Amendatory Endorsement was not limited to potential claims involving "contamination removal costs" (Compl. ¶ 46), but also extended to "business interruption (time element) losses."  (ECF No. 1 at

92.)   The law instructs that where, as here, the allegations of a complaint are contradicted by an exhibit made a part thereof, the exhibit controls and the Court need not accept as true the allegations of the complaint.   *Consolidated Jewelers v. Standard Fin. Corp.*, 325 F.2d 31, 36 (6th Cir. 1963); *Sutters v. U.S. Bank, N.A.*, 2015 WL 4104846, at \*16 (E.D. Mich. July 8, 2015).

In asking this Court to find coverage, Plaintiff seeks to have the Court ignore the plain meaning of State Farm's Virus Exclusion.  Doing so would violate the "fundamental rule of Michigan insurance jurisprudence … that an insurer can never be held liable for a risk it did not assume and for which it did not charge or receive any premium."  *Dunn*, 657 N.W.2d at 160.  Moreover, the resulting imposition of retroactive liability under State Farm's insurance contracts would also violate the fundamental protections of the United States and Michigan Constitutions against denial of due process and taking of property without just compensation.[4]  To create new insurance coverage and new liabilities that State Farm never contracted to provide and for which the policyholders were not charged premiums would unfairly and arbitrarily force State Farm and other insurers to bear the enormous costs of a public catastrophe.  Interpreting insurance policies to cover excluded COVID-19 claims would drain insurers' reserves set aside to cover other policyholders' covered losses.  The drastic departure from settled Michigan law and the retroactive creation

---

[4] *See* U.S. CONST., amends. 5, 14; MICH. CONST., art. I § 17.

of liability under State Farm's insurance contracts sought by Plaintiff would violate the basic guarantees of fairness protected by the Due Process and Takings Clauses. *See Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984); *E. Enters. v. Apfel*, 524 U.S. 498, 537 (1998). For these reasons, the Court should hold that the Policy's Virus Exclusion excludes Plaintiff's claimed losses from coverage.

### ii.   Even Without The Virus Exclusion, Plaintiff Does Not Allege Covered Losses

Even without the Virus Exclusion that bars its claims, Plaintiff does not state a claim for coverage for the separate reason that its allegations are insufficient to establish the required "accidental direct physical loss to" Covered Property. (Policy at 3; Endorsement at 1.a., 2.a., 3b.) Again, for there to be a Covered Cause Of Loss under the Policy, it must *both* constitute "accidental direct physical loss to" Covered Property *and* it must not be excluded. Plaintiff's conclusory allegations point to no such "accidental direct physical loss to" Covered Property or explain what it is. Such unsupported assertions "are no more than conclusions" and therefore "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

Even if Plaintiff had alleged that the coronavirus was present at its property (which it has not), that would not constitute "accidental direct physical loss." The requirement of "physical loss" is "widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact

unaccompanied by a distinct, demonstrable, physical alteration of the property." *Universal Image Prods., Inc. v. Chubb Corp.*, 703 F. Supp. 2d 705, 711 (E.D. Mich. 2010) (Michigan law), *aff'd sub nom., Universal Image Prods., Inc. v. Fed. Ins. Co.,* 475 F. App'x 569 (6th Cir. 2012).  The Michigan federal district court applied this rule in *Universal* in rejecting an insured's claim for business interruption losses due to the presence of mold and bacteria in a ventilation system.  The court found that there was no coverage under the policy because the insured had not shown "that it suffered any structural or any other tangible damage to the insured property."  703 F. Supp. 2d at 710.  The Sixth Circuit affirmed, concluding that mold and bacteria in a building did not amount to "direct physical loss" because that phrase "contemplates an actual change in insured property" – that is, "tangible" damage. *Universal Image Prods.*, 475 F. App'x at 573.

Plaintiff's allegations establish that the insured property suffered no tangible damage.  Plaintiff admits that "there is no evidence at all that the virus did enter Plaintiff's property or that it had to be de-contaminated."  (Compl. ¶ 8.)  The Complaint merely provides conclusory allegations that Plaintiff's property "has been damaged" by the closure order because "[i]t cannot be used for business activity in accordance with its pre-Order function."  (*Id.* ¶ 35).

The Ingram County Circuit Court flatly rejected such an argument in *Gavrilides*, Case No. 20-258-CB-C30.  In that case, the plaintiff insured similarly

13

alleged that there was no evidence of COVID-19 on the covered properties, but instead argued that its restaurants were damaged during the pendency of the government orders because people were physically restricted from dine-in services. (Ex. C at 20, 23.)   The court said that argument was "simply nonsense," and dismissed the plaintiff's claims, finding that under Michigan law direct physical loss must take a tangible form and alter the physical integrity of the property.  *Id.*  The court stated that the plaintiff was "complaining about the loss of access or use of the premise[s] due to executive orders and the Covid-19 virus crisis." *Id.* at 23.  The court held "that those things do not constitute the direct physical damage or injury that's required under the policy as I've outlined." *Id.*[5]

Other courts have likewise held that insurance coverage is unavailable where, as here, the plaintiff has suffered an adverse effect on revenue, rather than physical damage resulting in a suspension of business.  In *National Children's Expositions Corp. v. Anchor Insurance Co.*, 279 F.2d 428, 430 (2d Cir. 1960), recovery was denied under the insured's use and occupancy policy for reduction in attendance due

---

[5] Similarly, a federal district court in New York denied a preliminary injunction in another COVID-19 case where a magazine publisher sought to compel its insurer to pay its business interruption claim pending resolution of the lawsuit.  The court stated that the COVID-19 virus did not cause direct physical loss or damage to the property, as needed to trigger the policy's business interruption coverage.  The court concluded that business income loss for COVID-19 "is just not what's covered under these insurance policies."  *Social Life Magazine, Inc. v. Sentinel Ins. Co.,* No. 1:20-cv-3311 (S.D.N.Y.), ECF No. 24-1, May 14, 2020 Hr'g Tr. at 15:12-16.

to a snowstorm, since its building was open.  Similarly, in *Keetch v. Mutual of Enumclaw Ins. Co.*, 831 P.2d 784, 786 (Wash. Ct. App. 1992), recovery was denied under the insured's business interruption policy where a hotel had reduced earnings but remained open after a volcanic eruption that covered the building in ash.

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014), further refutes Plaintiff's claim for coverage. In *Newman*, the court held that a large scale power outage resulting in loss of access to the plaintiff's offices for several days did not constitute the requisite "direct physical loss or damage" to "trigger loss of business income and extra expense coverage." *Id.* at 333-34.  The court stated that "[t]he words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the [insured] premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure ....  [T]he Court is unaware of authority supporting [plaintiff's] … argument that 'direct physical loss or damage' should be read to include to extend to the mere loss of use of a premises, where there has been no physical damage to such premises." *Id.*

Nor does it suffice that Plaintiff experienced a loss of the "full and unencumbered use of" its property due to a governmental shutdown order.  (Compl. ¶ 6.)  As in *Source Food Technology, Inc. v. U.S. Fidelity & Guaranty Co.*, 465 F.3d

15

834 (8th Cir. 2006), where there was a loss of use of property due to a governmental embargo order, "the policy's use of the word 'to' in the policy language 'direct physical loss *to* property' is significant." *Id.* at 838 (emphasis in original).  Plaintiff's "argument might be stronger if the policy's language included the word 'of' rather than 'to,' as in 'direct physical loss of property' or even 'direct loss of property.' But these phrases are not found in the policy." *Id.*  "[T]he policy's use of the words 'to property' further undermines [Plaintiff's] argument" that coverage is triggered under the Policy.  *Id.*  Plaintiff's breach of contract claim should be dismissed.

### iii.    The Policy's Civil Authority Provision Is Inapplicable

Plaintiff alleges it is entitled to coverage under the Civil Authority provision in the Endorsement to the Policy.  (Compl. ¶¶ 10, 16, 22, 37.)  Yet under the Policy and its Endorsement, [6] Plaintiff has not pled facts that meet the requisite elements to trigger the Civil Authority provision, which provides coverage for loss of income caused where damage to other property causes a civil authority to prohibit access to the insured property, causing loss of income to the insured.  (Endorsement at 1, 4.)

The requirements for Civil Authority coverage include (1) "damage to property other than property at the described premises"; (2) caused "by a Covered

---

[6] The Endorsement expressly incorporates the provisions of the Property coverage provided in the Policy, stating:  "The coverage provided by this endorsement is subject to the provisions of SECTION I — PROPERTY, except as provided below" and "All other policy provisions apply."  (Endorsement at 1, 4.)

Cause Of Loss"[7]; and (3) "a civil authority … prohibits access to the described premises, provided that"; (4) "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property"; and (5) "[t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause Of Loss that caused the damage, or … to enable a civil authority to have unimpeded access to the damaged property."  (Endorsement ¶ 4 (p. 2))  Plaintiff fails to allege facts supporting these requirements.

Plaintiff does not allege damage to a nearby property.  Moreover, even if Plaintiff could claim that a nearby property sustained the same purported "damage" that it alleges its property sustained, that damage is not "accidental direct physical loss" and is not caused by a "Covered Cause Of Loss" as required by the Civil Authority provision.  Again, "Covered Cause Of Loss" means **both** an "accidental direct physical loss to" property **and** that such loss is not excluded by the Policy. Plaintiff fails both tests.  Plaintiff has pled no "accidental direct physical loss to" any property.  Additionally, Plaintiff affirmatively alleges an excluded cause of loss:  the COVID-19 coronavirus.  Plaintiff alleges it sustained losses due to the Governor's

---

[7] *See* Policy, Section I – Covered Causes Of Loss (p. 4) (requiring "accidental direct physical loss" that is not "Excluded in SECTION I –EXCLUSIONS").

March 24 shutdown order.  (Compl. ¶¶ 6, 31, 40.)  This order was issued to "suppress the spread of COVID-19."  (Ex. A at 2.)  As discussed above, the Policy states:  "We do not insure under any coverage for any loss which would not have occurred in the absence of ... Virus." (Policy at 5-6 (¶ 1, j (2).)  The Virus Exclusion bars coverage.

Plaintiff has failed to allege the hallmark requirement for coverage under the Civil Authority provision.  *See Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 685 (5th Cir. 2011); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co.*, 2007 WL 2489711, at *3 (M.D. La. Aug. 29, 2007).  "[C]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property."  *Dickie Brennan*, 636 F.3d at 686-87 (citations omitted); *see United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 131 (2d Cir. 2006); *Syufy Enters. v. Home Ins. Co.*, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, 2008 WL 450012, at *9 (S.D. Tex. Feb. 15, 2008).  For example, coverage might apply where a civil authority orders an insured building closed for safety reasons while an adjacent building that was damaged by fire is being repaired.  *See Syufy Enters.*, 1995 WL 129229, at *2 n.1. A "causal link" must exist between prior actual damage to nearby premises "and the action by a civil authority."  *S. Tex. Med. Clinics*, 2008 WL 450012, at *10; *see*

*Syufy Enters.*, 1995 WL 129229, at *2; *see also Not Home Alone, Inc. v. Phila. Indem. Ins. Co.*, 2011 WL 13214381 at *6 (E.D. Tex. Mar. 30), *adopted*, 2011 WL 13217067 (E.D. Tex. Apr. 8, 2011).  No such situation is alleged here.

Plaintiff fails to plead the requisite causal link between actual damage to nearby premises and the prohibition on access.  The order does not preclude access to the insured premises because of alleged damage to other property within the area of the insured premises.  Rather, the order permits access to Plaintiff's premises to, *inter alia*, "maintain the value of inventory and equipment," "ensure security," and "process transactions (including payroll and employee benefits)."  (Ex. A at 3.)

A causal relationship is also absent when civil action is taken due to fear of future harm, rather than prior actual physical damage.  Thus, when construing similar policy language, courts have rejected civil authority coverage where businesses had losses due to preventive governmental measures, such as pre-hurricane evacuations or the threat of terrorist attacks, before any physical damage occurred.  *See Dickie Brennan*, 636 F.3d at 686–87; *S. Tex. Med. Clinics*, 2008 WL 450012, at *10; *Not Home Alone, Inc.*, 2011 WL 13214381, at *6-7; *United Air Lines*, 439 F.3d at 134-35.  Here, because the government order was issued to "suppress the spread of [the] COVID-19" virus (Ex. A at 2), and not because of prior actual "physical damage," "no coverage" exists for "loss of revenue because of business interruption."  *Dickie Brennan*, 636 F.3d at 687.

Moreover, the provision has additional requirements, including that "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority … as a result of the damage," where the described premises are within that area (but no more than a mile away).  (Endorsement ¶ 4.a(1).)  Plaintiff does not so allege.  In fact, "[a]ccess to the area immediately surrounding the damaged property" is not "prohibited."  Beyond the lack of physical barricades, the government order allows access to grocery stores, pharmacies, and gas stations, among others.  (Ex. A at 5-7.)  One may "purchase groceries, take-out food, gasoline, [and] needed medical supplies"; "visit an individual under the care of a health care facility, residential care facility, or congregate care facility"; and "engage in outdoor activity" in these areas. (*Id.*)  In sum, because Plaintiff fails to allege the factual predicates for coverage under the Civil Authority provision, its claim for breach fails as a matter of law.

### iv.   The Policy's "Loss of Income," "Extended Loss of Income," and "Extra Expense" Coverage Is Inapplicable

Plaintiff also alleges it is entitled to coverage under the Loss of Income, Extended Loss of Income, and Extra Expense coverage provided by the Endorsement.  (*E.g.*, Compl. ¶¶ 10, 16, 19-21.)  Beyond being barred by the Virus Exclusion, Plaintiff is not entitled to Loss of Income, Extended Loss of Income, or Extra Expense coverage because it does not meet the conditions for coverage.  As an initial matter, under each of these provisions, coverage is only available where there has been "accidental direct physical loss to property."  (Endorsement at 1-2.)

20

But as shown above, Plaintiff's allegations are insufficient to constitute "accidental direct physical loss to property."  (*See* Point III.A.ii *supra.*)

Under Plaintiff's allegations, the other requirements for coverage under these provisions are also not satisfied.  Not only does the Policy provide that State Farm "do[es] not insure ***under any coverage*** for any loss which would not have occurred in the absence of … Virus" (Policy at 5-6 (emphasis added)), but the Loss of Income, Extended Loss of Income, and Extra Expense provisions also expressly require that the loss "must be caused by a Covered Cause Of Loss."  (Endorsement at 1-2.)  Once again, "Covered Cause Of Loss" means ***both*** an "accidental direct physical loss to" property ***and*** that such loss is not excluded by the Policy.  Plaintiff fails both tests. As already noted, no "accidental direct physical loss" is pled as to any property and, under the Policy, coverage is barred by the Virus Exclusion.  (Policy at 5-6.)

Further, to the extent that Plaintiff's suspension of business was caused by the government order, it is not a covered loss.  That order is not, and did not cause, the required "accidental direct physical loss to property."  Moreover, under the Policy's "Acts or Decisions" Exclusion, "[c]onduct, acts or decisions … by a governmental body" do not constitute a covered loss, and if such acts and decisions "cause," "contribute to," or "aggravate" an excluded loss (such as virus), the loss remains excluded.  (Policy at 8; *see also* Point III.A.v *infra*.)

Loss of Income, Extended Loss of Income, and Extra Expense coverage

applies when there is a necessary suspension of operations "during the 'period of restoration,'" the period when the property is "repaired, rebuilt or replaced with reasonable speed and similar quality" or until "business is resumed at a new permanent location." (Endorsement at 1, 4.) Here, there is no period of restoration. There are no allegations that the coronavirus necessitated repairs, replacement, or rebuilding, or that new permanent locations are being sought. Loss of Income, Extended Loss of Income, and Extra Expense coverage is not available for a suspension of operations where, as here, a shutdown is due to government order.

### v. **Additional Policy Exclusions Bar Plaintiff's Claims**

Coverage is also barred by the "Ordinance or Law," the "Acts or Decisions," and the "Consequential Loss" Exclusions, each of which also takes the loss at issue outside the Policy's definition of Covered Cause Of Loss and bars coverage.

The "Ordinance or Law" Exclusion bars coverage for any loss due to "[t]he enforcement of any ordinance or law" "[r]egulating the ... use ... of any property," and "applies … even if the property has not been damaged." (Policy, Exclusions ¶ 1.a (p. 5).) Under such an exclusion, "costs ... incurred due to the enforcement" of certain restrictions imposed by governmental officials on the "use" of property are "excluded." *Bahama Bay II Condo. Ass'n v. United Nat'l Ins. Co.*, 374 F. Supp. 3d 1274, 1281-82 (M.D. Fla. 2019); *see also MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1192 (10th Cir. 2009).

The "Acts or Decisions" Exclusion bars coverage for any loss caused by "[c]onduct, acts or decisions … of any person, group, organization, or governmental body whether intentional, wrongful, negligent or without fault." (Policy, Exclusions ¶ 3.b (p. 8).)  Where a claimed loss is caused by the acts or decisions of a governmental authority, the loss is excluded from coverage.  For example, in *Cytopath Biopsy Laboratory v. U.S. Fidelity & Guaranty Co.*, 774 N.Y.S.2d 710 (App. Div. 2004), the "Acts or Decisions" exclusion in the plaintiff's policy barred coverage for alleged business interruption losses because "the real losses claimed herein resulted from refusal by the [governmental] authorities to permit resumption of operations until proper permits were obtained and a more acceptable ventilation system was installed."  *Id.* at 711; *see Torres Hillsdale Country Cheese v. Auto-Owners Ins. Co.*, 2013 WL 5450284, at *4 (Mich. Ct. App. Oct. 1, 2013) (applying Acts or Decisions exclusion).

Here, because acts by governmental officials allegedly caused Plaintiff's losses by putting restrictions on the use of Plaintiff's property (Compl. ¶¶ 31-40), the Ordinance or Law Exclusion and the Acts or Decisions Exclusion are each implicated.  Either exclusion bars coverage.

Additionally, the "Consequential Loss" Exclusion bars coverage for "loss whether consisting of, or directly and immediately caused by … [d]elay, loss of use or loss of market."  (Policy, Exclusions ¶ 2.b (p. 6).)  The Loss of Income and Extra

Expense endorsement also excludes "any other consequential loss." (Endorsement, Exclusions, ¶ 2 (p. 3).) Courts have upheld similar consequential loss exclusions where an insured alleged that "its damages were caused by its inability to access" its property and "did not contend that its [property] had been physically damaged in any way." *Petroterminal de Panama, S.A. v. Houston Cas. Co.*, 114 F. Supp. 3d 152, 160 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 46 (2d Cir. 2016). Plaintiff alleges that it sustained lost profits due to the governmental shutdown orders. (Compl. ¶¶ 6, 31, 40.) Such loss of income claims are quintessential consequential loss, *see Bartram, LLC v. Landmark Am. Ins. Co.*, 864 F. Supp. 2d 1229, 1240 (N.D. Fla. 2012), and are barred by the Policy's exclusion for loss caused by loss of use. *See Petroterminal de Panama, S.A. v. Houston Cas. Co.,* 659 F. App'x 46, 51 (2d Cir. 2016).

### vi.   Plaintiff Cannot Bring A Breach of Contract Claim Against State Farm Mutual Automobile Insurance Company

Plaintiff's Policy was issued by State Farm Fire and Casualty Company, which provides "insurance for State Farm customers in Michigan." (Compl. ¶ 14.) State Farm Mutual Automobile Insurance Company ("State Farm Mutual") is a separate legal entity organized under the laws of Illinois and headquartered there. (*Id.* ¶¶ 13, 15.) As Plaintiff's Policy makes clear, State Farm Mutual is not a party to the insurance contract. (Policy at 3; Declarations at 1.) Thus, Plaintiff cannot assert a breach of contract claim against State Farm Mutual. *See Nat'l Sand, Inc. v. Nagel Constr. Co.*, 451 N.W.2d 618, 620 (Mich. Ct. App. 1990).

For these reasons, Plaintiff's breach of contract claim should be dismissed.

**B.    Plaintiff's Declaratory Judgment Claim Should Be Dismissed**

Plaintiff also seeks declaratory judgments that "its Policy and other Class members' policies provide coverage for the [alleged] losses of business income," and "Extra Expenses" that they "have incurred caused by actions of civil authorities." (Compl. ¶¶ 83, 103, 123.) These claims fail for the same reasons as Plaintiff's breach of contract claim:  there is no coverage under the Policy for Plaintiff's claimed losses. *See* Point III.A *supra*. Further, this Court has recognized that "declaratory judgment is redundant" where "the claim of breach of contract will dispose of the issues of the parties' respective obligations." *Dow Chem. Co. v. Reinhard*, 2007 WL 2780545, at *7 (E.D. Mich. Sept. 20, 2007) (Ludington, J.). Accordingly, because Plaintiffs' claims for declaratory judgment duplicate its claims for breach of contract, the declaratory judgment claims should be dismissed. *Id.*

## IV.    CONCLUSION

For the foregoing reasons, State Farm respectfully requests that the Court grant its motion to dismiss Plaintiff's Complaint for failure to state a claim.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, PLC

By:   /s/  Thomas W. Cranmer
        Thomas W. Cranmer (P25252)
        *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2020, I caused a true and correct copy of the foregoing to be filed on the Court's CM/ECF system, which served notice on all counsel of record.

*/s/ Matthew P. Allen*